## FARGO GLASS & PAINT CO. v. GLOBE AMERICAN CORPORATION.

### No. 9290.

Circuit Court of Appeals, Seventh Circuit.

May 6, 1947.

Rehearing Denied June 6, 1947.

Harry G. Fins and Bernard N. Buchholz, both of Chicago, Ill., for appellant.

Earl B. Barnes and Louis A. Highmark, both of Indianapolis, Ind., and James H. Cartwright, of Chicago, Ill. (Barnes, Hickam, Pantzer & Boyd, of Indianapolis, Ind., and Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff sued the defendant for damages allegedly due for the cancellation of a contract. To the amended complaint the defendant filed a motion to dismiss, which motion was sustained by the District Court. The plaintiff not offering to plead further, the amended complaint was dismissed. From this judgment, the plaintiff has appealed.

The plaintiff and the defendant entered into a written contract on February 26, 1945. The preamble to the contract recited that the plaintiff was to be known as the distributor in the proposed marketing of gas ranges manufactured by the defendant under its trade-mark, "Dutch Oven," and that the purpose of the contract was "To define territorial limits in which the Distributor is to sell and to outline certain working agreements pending the execution of a formal contract * * *." The contract designated a territory to which the plaintiff was to confine its selling efforts exclusively, with the condition that the defendant might take over and handle directly any account in the territory and on any sales made to such an account, five per cent commission was to be paid the plaintiff. The plaintiff agreed to accept 400 Dutch Ovens as its annual quota for the territory "to be sold in aforesaid territory during the first 12 months of Dutch Oven range manufacture," and as part of the consideration for the agreement to give the plaintiff the said territory, the plaintiff gave the defendant, "coincident with the consummation of this agreement of intent" an initial order for one-half its quota of Dutch Ovens for the first year, specifications to be given the defendant when the ovens were ready for inspection. The plaintiff agreed not to "sell or handle other articles that are the same as or similar in purpose to (Dutch Ovens) unless said other products are purchased at a cost 25% below the net cost of Dutch Oven Gas Ranges." The plaintiff further agreed "to have one or more Dutch Oven specialists who will devote his/their major time to establishing new dealers" in the territory, and the plaintiff's organization was to promote the defendant's products.

The contract recited further that prices could not be quoted until the Dutch Ovens were nearer the day of manufacture, but that "prices, terms and conditions of sale will be in accordance with established business practice." The agreement was to continue until superseded by a formal contract or cancelled by either party giving written notice.

The amended complaint alleges that from the day after the execution of the contract on February 26, 1945 to September 26, 1945, when the defendant cancelled the contract, the plaintiff had ordered all its quota of 400 units of Dutch Ovens; that it had ceased selling and handling and did not sell or handle any gas ranges except Dutch Ovens during said time; that it had established 175 new dealer accounts and obtained initial orders for 2,500 Dutch Ovens to be delivered within six months after the production of Dutch Ovens began; that all of these things were done under the encouragement and with the approval of the defendant which had advertised Dutch Ovens extensively and in said advertisements had designated the plaintiff as one of its distributors; that the defendant had furnished the plaintiff order blanks upon which to take the said 2,500 orders which the plaintiff had obtained and the defendant had approved; and that in such development of the territory, pursuant to the terms of the contract and under the defendant's encouragement and approval, the plaintiff had expended large sums of money for advertising, salesmen's salaries and expenses, telephone and telegraph ex-

pense, credit investigations, and miscellaneous expenses.

■ These facts are admitted by the defendant's motion to dismiss. If the plaintiff is entitled to any relief under these facts, the motion to dismiss should have been overruled. Federal Rules of Civil Procedure, Rule 8(a), 28 U.S.C.A. following section 723c; Guth v. Texas Co. 7 Cir., 155 F.2d 563.

■ It was admitted at the argument by counsel for the defendant that under the contract the defendant had contracted for the plaintiff to establish new dealer accounts and to take orders for Dutch Ovens in the territory assigned to the plaintiff, and the plaintiff had done so. The plaintiff did more. Coincidentally with the execution of the contract, the plaintiff gave the defendant an order for one-half of its yearly quota of Dutch Ovens, and before the cancellation of the contract the plaintiff had given the defendant an order for its entire yearly quota of 400 ovens and had ceased selling all other gas ranges. This was not a contract to sell gas ranges to the plaintiff which the plaintiff was to then resell. This was a contract of hiring or of agency. Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F.2d 425. The plaintiff performed the acts the defendant engaged it to perform, namely, establish dealer accounts and take orders for Dutch Ovens only in an exclusive territory.

The defendant says it may cancel the contract with impunity. We agree that it may as to any liability for said contract subsequent to the date of cancellation. As to so much of the contract as had been carried out by the plaintiff doing what the defendant hired it to do, we think the defendant cannot escape liability because it decided, for reasons sufficient unto itself, not to pursue the undertaking further.

In Bendix Home Appliances, Inc. v. Radio Accessories Co., 8 Cir., 129 F.2d 177, 181, one of the cases heavily relied upon by the defendant, the court said: "But where the arbitrary and unrestricted right of cancellation is reserved to one or both parties, contracts like the one here are binding only to the extent that they have been performed."

■ No controlling Illinois authority has been cited, nor have we found any. The rule which we think has some application here was clearly enunciated by the Missouri Court of Appeals in Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624, 629: "The limitation is that, in any case of an indefinite agency where it is revoked by the principal, if it appears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principle acted upon by the courts in the circumstances suggested requires no more than that, in every instance, the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly." See also Terre Haute Brewing Co. v. Dugan, supra.

The defendant has also relied upon such cases as Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675, and Buggs v. Ford Motor Co., 7 Cir., 113 F.2d 618, where the contract provisions for cancellation controlled not only the future rights of the parties but also transactions that had occurred before cancellation. The cancellation clause in the instant contract is not so broad. It has only the effect of termination and looks to the future alone. Furthermore, the contracts in those cases contemplated the sale of goods to the plaintiffs which the plaintiffs were to resell and were not contracts of hiring or agency, as is the contract in the instant case.

The plaintiff did all it was supposed to do under the contract, and the defendant not only encouraged and induced the plaintiff to do so but accepted the fruits of the plaintiff's efforts until such time as it decided not to go ahead with the arrangement.

■ We think the facts alleged in the amended complaint were sufficient to show that the plaintiff was entitled to some relief.

What the measure of the relief may be cannot be determined upon the present record. That will have to be determined upon the further pleadings and trial.

The judgment is reversed and the cause remanded to the District Court with directions to vacate the dismissal of the complaint and to overrule the motion to dismiss.

### On Petition for Rehearing.

MINTON, Circuit Judge.

Our statement that the contract "was a contract of hiring or of agency" is made only in the light of the document itself and the allegations in the complaint concerning the partial performance of the contract. We do not intend to say that the contract in and of itself is unqualifiedly a contract of hiring or of agency. This case comes to us on the pleadings. All we intend to say is that the contract and the allegations as to its partial execution, and the approval by the defendant of the acts performed by the plaintiff, including the obtaining of the 2,500 sales orders, and the cancellation of the contract before the plaintiff had a chance to recoup any of the expenses incurred and laid out, were facts sufficient to withstand the motion to dismiss. They showed that the plaintiff was entitled to some relief.

The facts were admitted on the state of the record before us. The contract does not stand alone. The complaint alleges the performance of the acts the defendant contracted the plaintiff should do. Counsel for the defendant admitted at the argument that the plaintiff had done all that the defendant had contracted for it to do. The plaintiff alleged in Paragraph 5B(7) of the complaint that the defendant "approved the plaintiff's acts in the establishing of the 175 dealer accounts, in obtaining the 2,500 orders for 'Dutch Oven' gas ranges, and in furthering the sale and distribution of defendant's product, and urged the continuance of plaintiff's acts and efforts in the sale and distribution of defendant's product." Whether the defendant did or not was not open to argument before us in this case, either at the oral argument or as was attempted in the petition for rehearing.

The Missouri doctrine, so-called, seems to us applicable to the facts alleged in the complaint. The law of Illinois had not been declared on a state of facts such as was alleged in the complaint. We were therefore free to look elsewhere for the rule of law that we thought should be applied. Shell Oil Co. v. Manley Oil Corp., 7 Cir., 124 F.2d 714.

The petition for rehearing is denied.