NORTHWEST LINCOLN-MERCURY, Plaintiff-Appellant, v. LINCOLN-MERCURY DIVISION FORD MOTOR COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 86—1821

Opinion filed July 21, 1987.

Patrick L. Moore, of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for appellant.

Michael R. Feagley, Michele Odorizzi, Doreen A. Gagnon, and John M. Satalic, all of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Northwest Lincoln-Mercury (Northwest), an auto dealer, appeals from an order granting summary judgment in favor of defendant Lincoln-Mercury Division Ford Motor Company (Ford). Northwest brought suit against Ford under a section of the Illinois Motor Vehicle Franchise Act (MVFA) to enjoin the proposed location of another authorized dealer within 10 miles. (Ill. Rev. Stat. 1985, ch. 121½, par. 751 *et seq.*) The circuit court found that the contracts between the parties predated the enactment of the MVFA. Therefore,

the MVFA could not be applied retroactively.

The issues presented are: (1) whether Northwest waived certain arguments by failing to make them in a timely manner before the trial court; and (2) whether the contracts entered into between Ford and Northwest in 1978 were so "renewed, changed, amended, modified or subject to novations" after November 3, 1983, that they became new contracts which could be properly regulated under an amendment to the MVFA that was enacted on that date.

Northwest is a Lincoln-Mercury dealer located in Schaumburg, Illinois. In 1978, Northwest entered into two sales and service agreements with Ford, one covering the sale of Lincolns and the other the sale of Mercurys. Under those agreements, which are identical in form, Ford had an absolute right to award additional dealerships for Lincolns and Mercurys. The only exception was where the new dealer would be both within Northwest's contractually assigned "dealer locality" and within 10 driving miles of Northwest's principal place of business.

In November 1985, Ford notified Northwest that it intended to award a Lincoln-Mercury dealership to a new dealer to be established in Bloomingdale. Although the proposed dealership would be located within 10 miles of Northwest, Northwest has conceded that it is not within Northwest's assigned locality under the relevant sales and service agreements.

The MVFA, which went into effect in 1979, severely limits a manufacturer's right to grant "additional franchises *** of the same line" where the new dealership is to be located within the first dealer's "relevant market area." Prior to 1983, the term "relevant market area" was construed to mean the area assigned to the dealer in its agreement with the manufacturer. (See *Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 761, 410 N.E.2d 205.) In 1983, however, the General Assembly amended the MVFA by adding a definition of "relevant market area" that includes any point within a 10-mile radius of the dealer's principal place of business, regardless of whether that point is also within the dealer's contractually assigned territory. Ill. Rev. Stat. 1985, ch. 121½, par. 752(q).

In January 1986, Northwest brought this action, seeking injunctive relief pursuant to the MVFA, as amended, to prohibit Ford from awarding the Bloomingdale Lincoln-Mercury dealership. In March, Ford moved for partial judgment on the pleadings or partial summary judgment on the ground that the statutory provisions enacted in 1983 could not supersede the provisions of the 1978 contracts between

Ford and Northwest.[1] In support of its motion, Ford argued that the MVFA was not intended to apply, and cannot constitutionally be applied, to impair contractual rights that were created before its effective date. Because Ford's contractual right to award a dealership to another dealer anywhere outside of Northwest's assigned locality was created in 1978, it could not be diminished by changes in the MVFA that did not go in effect until November 3, 1983.

After hearing the arguments of counsel, the trial judge rejected Northwest's argument that the agreements had been renewed after the MVFA was amended and held that the MVFA could not be retroactively applied to alter Ford's contractual rights.

At the hearing on May 19, 1986, the trial judge declined to consider further argument by Northwest, noting that his ruling on the retroactivity issue had been made on April 25. This appeal followed.

I

■ Ford contends that Northwest failed to raise the new contract or novation type theory before the trial court and is therefore precluded from raising that argument on appeal. The order of May 19, 1986, recites that the court "considered the submissions and arguments of the parties" and was "fully advised in the premises." During the hearing preceding the entry of the final order, Ford's counsel stated in open court:

"The plaintiff has filed as I understand it a supplemental brief which basically rehashes, repeats and goes over yet again in formal written form the arguments which plaintiff's counsel has previously made to the court and which this court has previously rejected."

A review of the record reveals that the supplemental brief and other briefs and memoranda filed by the parties in the trial court show that Northwest advanced the theories of a new contract, change or novation. Presumably, the trial court considered these arguments when it made its ruling. (*Northwestern Steel & Wire Co. v. Department of Revenue* (1983), 120 Ill. App. 3d 461, 465, 458 N.E.2d 168, *appeal denied* (1984), 99 Ill. 2d 530.) Even if there is no indication that the argument was made orally, the briefs and memoranda filed with the circuit court are sufficient to preserve the issue. *In re Petition by the*

---

[1]The motion was for partial relief because Ford agreed that Northwest had standing to challenge an award of a Merkur dealership to the Bloomingdale dealer, inasmuch as Northwest's sales and service agreement for the Merkur line was entered into after the 1983 amendment to the MVFA.

*City of East Peoria for a Special Assessment for "East Peoria Water-works Improv. Project 78—B"* (1982), 105 Ill. App. 3d 712, 714, 434 N.E.2d 781.

We conclude that Northwest has adequately preserved this argument for review.

II

■■ Northwest argues that the MVFA should be applied to the preexisting agreements which were "changed, altered or renewed" after the MVFA's 1983 amendment because the changes resulted in a new contract and, therefore, the prohibition of retroactive application does not apply. Northwest does not challenge the cases holding that the MVFA cannot be applied retroactively to preexisting franchise agreements. *E.g., Fireside Chrysler-Plymouth Mazda, Inc. v. Chrysler Corp.* (1984), 129 Ill. App. 3d 575, 472 N.E.2d 861, *appeal denied* (1985), 102 Ill. 2d 553; *Marquette National Bank v. Loftus* (1983), 117 Ill. App. 3d 771, 454 N.E.2d 11, *appeal denied* (1983), 96 Ill. 2d 561.

The 1978 agreements are between Northwest, an Illinois corporation, and Ford, a Delaware corporation. Both agreements have identical provisions stating the "personal nature" of the agreement; that Ford reserves the right to deal only with "individuals and entities specifically selected and approved" by Ford; that Ford entered into the agreement "in reliance" of the "representation and agreement that the following persons, and only the following persons, shall be the principal owners of the Dealer: William B. Zimmerman Revocable Trusts 73% *** Norman E. Zimmerman 27%." No change in ownership "shall be effective against the Company unless and until embodied in an appropriate amendment *** executed and delivered by the Company and the Dealer." These contractual provisions effectively restrained the alienability of the Northwest shares and insured the "personal nature" of the dealership for Ford.

On March 31, 1984, Norman Zimmerman applied to Ford for approval of an amendment that would result in his being a 100% owner of the stock of Northwest. Approximately 2½ months later, Ford completed the approval by its letter of June 13, 1984, stating in pertinent part:

"Enclosed is an executed amendment to your Lincoln and Mercury Sales Agreements effective June 5, 1984. The purpose of this amendment is to reflect the current ownership of Northwest Lincoln-Mercury, Inc."

This significant amendment, which took effect on June 5, 1984, cre-

ated new agreements between Northwest and Ford, and replaced the 1978 amendments. Ford drafted the contracts on its own special forms which emphasized the importance of the "personal nature" of the relationship. The explicit procedure for change of ownership approval contemplates a new agreement. Therefore, by its own terms, the 1978 agreements were so materially altered that, in effect, they became new agreements on June 5, 1984. This was more than six months after the November 3, 1983, amendment to the MVFA.

In *Barrett v. Lawrence* (1982), 110 Ill. App. 3d 587, 590, 442 N.E.2d 599, we held:

> "An agreement when changed by the mutual consent of the parties becomes a new agreement which takes the place of the old \*\*\* [W]hile it is axiomatic that a newly enacted statute does not control and alter a preexisting contract, it is applicable where the contract is modified after the statute's enactment \*\*\*."

Therefore, by its own terms, as well as under the rule in *Barrett*, new contracts came into existence.

Based on the foregoing, we conclude that summary judgment was improperly granted by the trial court because the MVFA should have been held as applicable to the contracts in question, thereby extending the protection of the MVFA to Northwest.

Accordingly, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.