### MECHANICAL RUBBER & SUPPLY COMPANY, Plaintiff,

v.

### AMERICAN SAW AND MANUFACTURING COMPANY, and Hagerty Brothers Company, Defendants.

#### No. 89–1120.

United States District Court, C.D. Illinois.

Nov. 14, 1990.

---

Phillip B. Lenzini, Kavanagh Scully Sudow White & Frederick PC, Peoria, IL, for plaintiff.

Ronald L. Hamm, Hamm & Hanna, Peoria, IL, Michael T. Reid, George W. Keeley, Halfpenny Hahn Roche & Marchese, Chicago, IL, Franklin L. Renner, Littler Renner Howard & Wombach, Peoria, IL, for defendants.

## ORDER

MIHM, Chief Judge.

Before the Court are Motions by the Defendant American Saw to dismiss the Amended Complaint (# 19 and # 36) and Motions by the Plaintiff Mechanical Rubber to Reconsider (# 44) and For Summary Judgment on American Saw's Counterclaim (# 26). The Court grants American Saw's Motions to Dismiss. The Court grants Mechanical Rubber's Motion to Reconsider in part and denies it in part. And, the Court denies Mechanical Rubber's Motion for Summary Judgment.

## BACKGROUND

Count I of the Amended Complaint alleges antitrust violations against American Saw under federal and state law. *See,* 15 U.S.C. § 14 and Ill.Rev.Stat. ch. 38, ¶ 60–3(4). Count II of the Amended Complaint alleges that American Saw wrongfully terminated Mechanical Rubber as a franchisee under the Illinois Franchise Disclosure Act of 1987. See Ill.Rev.Stat., ch. 121½, ¶¶ 1701 *et seq.* Count III of the Amended Complaint alleges that American Saw breached a distributorship contract with Mechanical Rubber. Counts IV and V are no longer pending because Hagerty Brothers Company, which was once a Defendant, is no longer a party to this action. This Court found in an order entered September 26, 1990 that there is no independent basis for jurisdiction over Hagerty Brothers who was a pendent party. Count VI of the Amended Complaint alleges that American Saw engaged in a scheme and conspiracy to defraud it. Count VII of the Amended Complaint alleges that American Saw engaged in a conspiracy to injure Mechanical Rubber in its business.

American Saw has filed an answer to the Amended Complaint and several counterclaims against Mechanical Rubber. Count I of the counterclaim is brought under the Lanham Trademark Act. *See,* 15 U.S.C.

§ 1125(a). Counts II and III are brought under the Illinois Uniform Deceptive Trade Practices Act and the Consumer Fraud and Deceptive Business Practices Act respectively.

### I. *Mechanical Rubber's Motion to Reconsider*

On September 26, 1990, this Court entered an order denying Mechanical Rubber's Motion to Remand and dismissed all the claims against the Defendant, Hagerty Brothers Company (hereinafter "Hagerty Brothers") for lack of subject matter jurisdiction. 747 F.Supp. 1292. Mechanical Rubber asserts that the Motion to Remand should have been granted because the removal to federal court was not carried out properly. Mechanical Rubber notes that removal is a purely statutory right which limits the state's judicial powers and consequently its requirements are to be strictly construed. *Shamrock Oil and Gas Corporation v. Sheets*, 313 U.S. 100, 108–109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

The statutory provision for removal is given in 28 U.S.C. § 1446. Mechanical Rubber contends that these provisions have been interpreted to require that *all* Defendants properly joined and served in the state court action must file a petition for removal (now a notice of removal) or join in another defendant's petition for removal within 30 days of service of that defendant. Mechanical Rubber maintains that, if this requirement is not met, then the entire cause must be remanded to the state court from which it was removed. *See, Cohen v. Hoard*, 696 F.Supp. 564, 565–566 (D.Kan. 1988); *Mason v. International Business Machines, Inc.*, 543 F.Supp. 444, 445–446 (M.D.N.C.1982); *Cornwall v. Robinson*, 654 F.2d 685, 686–687 (10th Cir.1981); *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants Local 349*, 427 F.2d 325, 326–327 (5th Cir.1970).

In the present case, the two Defendants, American Saw and Hagerty Brothers, were properly joined and served in the state action. However, Mechanical Rubber asserts that only American Saw filed a Notice of Removal and that Hagerty Brothers did not file such a notice or petition or join in the Defendant American Saw's notice. Further, Mechanical Rubber maintains that the only pleading that Hagerty Brothers filed in federal court within 30 days of service was an entry of appearance, filed two days after American Saw's Notice of Removal. Thus, Mechanical Rubber contends that the removal was fatally defective and that Plaintiff's Petition to Remand should have been granted.

■ In response, American Saw asserts that, contrary to Mechanical Rubber's representations in its Motion, Hagerty Brothers did indeed join the Notice of Removal. The last sentence of ¶ 4 in the Notice of Removal states: "Hagerty Brothers joins in removal of this action." While the general rule, with certain exceptions, is that removal is proper only if all defendants named in the action join in the petition for removal, American Saw contends that it is not necessary for all Defendants to actually sign the Petition. As one court stated:

> However, this court does not believe that it is necessary for all defendants actually to sign the petition. Requiring all defendants to sign would be a senseless formalism. As long as all defendants consent to removal within 30 days after service upon them of the complaint, (footnote omitted), the requirement that all defendants "join" in the petition is satisfied. *See, Crompton v. Park Ward Motors, Inc.*, 477 F.Supp. 699, 701 (E.D.Pa. 1979) ("all defendants must join in or consent to removal" within 30 day period); *Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649, 652 (S.D.N.Y. 1978) (removal valid despite failure of all defendants to sign petition where petition stated that all consented and nonsigning defendants submitted affidavit of consent after 30 day period had expired); *Crawford v. Fargo Mfg. Co.*, 341 F.Supp. 762, 763 (M.D.Fla.1972) (recognizing that all defendants must join in petition but not requiring all to sign); *Stangard Dickerson Corp. v. United Electrical, Radio and Machine Workers of America*, 33 F.Supp. 449, 451 (D.N.J. 1940) (removal valid although only one

defendant signed, remaining defendants filed separate paper consenting to petition).

*Colin K. v. Schmidt,* 528 F.Supp. 355, 358 (D.R.I.1981) (there the court was advised orally that co-defendants had no objection to the removal petition, and it was held sufficient).

This Court also believes that it is sufficient that American Saw stated that Hagerty Brothers joined in the removal of the action. However, as Hagerty Brothers did not sign the Petition, this Court believes that American Saw should be required to obtain an affidavit from Hagerty Brothers stating that it joined in the Petition for Removal at that time. This requirement is consistent with the requirements given by the court in *Sicinski,* 461 F.Supp. at 652.

Mechanical Rubber next asserts that if this Court finds that removal was proper and that remand was properly denied, then page 16 of the Court's order of September 26, 1990 should be modified to remand to state court all claims against Hagerty Brothers, rather than to dismiss said claims. Hagerty Brothers has not responded to this contention, and American Saw takes no position on this issue.

■ This Court believes that Mechanical Rubber is correct in contending that the Court's order of September 26, 1990 should be modified to remand to state court all claims against Hagerty Brothers, rather than to dismiss the claims. Several courts, in similar situations, have held that the proper response, for those defendants as to whom there was no subject matter jurisdiction, was to remand the claims to the state court rather than to dismiss. *See Maine Association of Interdependent Neighborhoods v. Commissioner, Maine Department of Human Services,* 876 F.2d 1051, 1053–1054 (1st Cir.1989); *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 11 (1st Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312; *Williams v. City of Atlanta,* 794 F.2d 624, 628–629 (11th Cir.1986); *Birkinshaw v. Armstrong World Industries, Inc.,* 715 F.Supp. 126, 127 (E.D.Pa.1989). In addi-

tion, 28 U.S.C. § 1447(c) which governs the procedure after removal generally states:

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded. (Emphasis added).

Therefore, the claims against Hagerty should be remanded to state court rather than dismissed, and the order of September 26, 1990 is thereby amended.

II. *American Saw's Motions to Dismiss*

Defendant American Saw contends that Counts II, III, VI, and VII fail to state a claim upon which relief can be granted.

A. American Saw's Motion to Dismiss Count II

■ Count II alleges a cause of action under the Illinois Franchise Disclosure Act of 1987, Ill.Rev.Stat. ch. 121½, ¶¶ 1701 *et seq.* for the wrongful termination of a franchise.

American Saw first asserts that Count II must be dismissed because it fails to allege facts sufficient to establish that the Plaintiff is a franchisee within the meaning of the Franchise Act. Section 3 of the Act defines the criteria necessary to establish a franchise. It provides:

Franchise means a contract or agreement, either express or implied, whether oral or written, between two or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is *substantially associated* with the franchisor's trademark, service mark, trade name, logo type, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise

fee of $500 or more. (Emphasis added).

Ill.Rev.Stat. ch. 121½, ¶ 1703.

■ If any element is not satisfied, then the franchise relationship is not satisfied. *Velkauskas v. State Farm Mutual Auto Insurance,* 157 Ill.App.3d 317, 109 Ill.Dec. 373, 379, 509 N.E.2d 1385, 1391 (3rd Dist. 1987). As American Saw contends, it appears that the Complaint fails to allege facts establishing the second element—that the operation of the Plaintiff's business is "substantially associated" with the Defendant's trademark. 14 Illinois Administrative Code, ch. 11, § 200.103 further defines the second element as follows:

Substantially associated:

A franchisee's business is *substantially associated* with the franchisor's trademark, service mark, trade name, logo type, advertising or other commercial symbol designating the franchisor or its affiliate within the meaning of § 31(b) of the Act, if the franchise or other agreement, the nature of the franchise or business or other circumstances permit or require the franchisee to identify its business to its customers primarily under such trademark, service mark, trade name, logo type, advertising or other commercial symbol. (Hereinafter referred to collectively as franchisor's mark in a manner likely to convey to the public that it is an outlet of the franchisor). (Emphasis added).

Count II alleges that the Plaintiff was a distributor marketing American Saw's Lenox band saw blades and that the Plaintiff's marketing plan resulted in the substantial association of the Plaintiff with the Lenox trade name in the minds of its customers through the Plaintiff's marketing and promoting of the Lenox product line.

As American Saw notes, however, the Complaint fails to allege that the Plaintiff used the Lenox name or mark to identify its business to its customers or to convey to the public that Mechanical Rubber is an outlet of American Saw. The sole use of the mark alleged is that the Plaintiff marketed the Lenox brand product line. This does not satisfy the second element necessary to establish a franchise. However, this inadequacy in the complaint could potentially be cured by the filing of an Amended Complaint.

American Saw's next objection to Count II is that the Franchise Disclosure Act cannot be retroactively applied to a pre-existing franchise. The franchise originated long before the January 1, 1988 effective date of the Act, and the "good cause" provision of § 19 of the Franchise Disclosure Act which requires "good cause" to terminate a franchise was not in effect prior to the effective date of the Act.

■ As American Saw asserts, it is the general principle of Illinois law that a statute is applied prospectively only unless there is an express statutory provision stating that the law is to have a retroactive effect. *Village of Wilsonville v. SCA Services, Inc.,* 86 Ill.2d 1, 18, 55 Ill.Dec. 499, 507, 426 N.E.2d 824, 832 (1981); *Williamson v. Doyle,* 112 Ill.App.3d 293, 67 Ill.Dec. 905, 910, 445 N.E.2d 385, 390 (1st Dist. 1983); *McAleer Buick–Pontiac Company v. General Motors Corp.,* 95 Ill.App.3d 111, 50 Ill.Dec. 500, 501, 419 N.E.2d 608, 609 (4th Dist.1981). Illinois has created a presumption that the state legislature intends its acts only to operate prospectively. *People ex rel. Manczak v. Carpentier,* 3 Ill.2d 556, 558–559, 121 N.E.2d 762, 763 (1954); *Schantz v. Hodge–Von de Bur,* 113 Ill. App.3d 950, 952–953, 69 Ill.Dec. 668, 670, 447 N.E.2d 1355, 1357 (4th Dist.1983); *McAleer,* 50 Ill.Dec. at 501. The intention to apply a law retroactively should not be implied. *Wilson–Raymond Constructors Company v. Industrial Commission,* 79 Ill.2d 45, 37 Ill.Dec. 582, 587, 402 N.E.2d 584, 589 (1980). The rule against giving a statute retroactive application is grounded in part upon the constitutional guarantee against the impairment of the obligation of contracts, a guarantee that would be violated if a law enacted subsequent to a party's acquiring constitutional rights were applied to that contract. *Champaign County Bank and Trust Company v. Jutkins,* 29 Ill.2d 253, 256, 193 N.E.2d 779 (1963); *Hogan v. Bleeker,* 29 Ill.2d 181, 188, 193 N.E.2d 844 (1963); *see also generally, Al-*

*lied Structured Steel Company v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

Although American Saw concedes that it could find no reported Illinois decision analyzing the retrospective application of § 19 of the 1987 Act to a pre-existing franchise agreement, it asserts that Illinois courts, when confronted with analogous attempts to apply other Illinois franchise acts, have uniformly refused to apply them retroactively.

In *McAleer,* 50 Ill.Dec. 500, 419 N.E.2d 608, a franchisee of General Motors attempted to prevent the termination of its franchise until General Motors could satisfy an analogous "good cause" requirement for termination under the Illinois Motor Vehicle Franchise Act, Ill.Rev.Stat. ch. 121½, ¶ 754(d)(5). Because the franchise agreement had been entered into four years before the passage of the Act, the court refused to apply the Act retroactively. The court rejected the plaintiff's argument that the application of the Act was not retroactive because the conduct it was applied to (the termination of the franchise) occurred after the effective date of the Act. The court found that the plaintiff's construction of the statute would result in a retroactive application even though the alleged termination occurred after the effective date of the Act. *Id.* 50 Ill.Dec. at 501–502, 419 N.E.2d at 609–610. The court stated that such an application would have adversely affected General Motors' vested contractual right to terminate without cause which existed prior to the Act. *Id.*

In *Marquette National Bank v. Loftus,* 117 Ill.App.3d 771, 73 Ill.Dec. 267, 454 N.E.2d 11 (1st Dist.1983), another Illinois Appellate Court followed *McAleer* and affirmed the dismissal of a claim under the Illinois Motor Vehicle Franchise Act because the franchise agreement pre-existed the Act, even though the acts giving rise to the claim occurred after the statute's enactment. Because the court could find no express provision stating that the Act was to be applied retroactively, the court found no basis for a claim under the statute. *Id.* 73 Ill.Dec. at 268, 454 N.E.2d at 12.

In response, Mechanical Rubber maintains that *McAleer* and *Marquette* are inapposite to the situation before the Court. It notes that both of the cases involve written contracts specifying the duration of the contract as well as the termination date and that each of those cases involved a manufacturer's non-renewal of the distributor's franchise agreement.

 Mechanical Rubber notes that the parties in this case have operated under an oral contract with no specified term of duration. A contract which does not specify a term of duration is terminable at the will of either party. *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.,* 130 Ill.App.3d 798, 86 Ill.Dec. 48, 52, 474 N.E.2d 1245, 1249 (1st Dist.1984), *aff'd,* 114 Ill.2d 133, 102 Ill.Dec. 379, 500 N.E.2d 1 (1986). Also, where a contract is terminable at the will of either party, the contract is subject to modification at any time by either party as a condition of its continuance. *Garber v. Harris Trust and Savings Bank,* 104 Ill. App.3d 675, 60 Ill.Dec. 410, 414–415, 432 N.E.2d 1309, 1313–1314 (1st Dist.1982). In *Garber,* credit card holders brought an action against the issuer of various cards claiming that the issuer had modified credit terms in violation of an alleged credit contract. The court stated that a contract for an indefinite duration is modifiable at the will of either party. As a result of this right to terminate at any time, the court ruled that either party may modify the terms of the contract as a condition of continuance.

Mechanical Rubber maintains that the contract in this case was modified by the statute enacted by the Illinois General Assembly. It asserts that American Saw was aware of the enactment of the Franchise Disclosure Act and was equally aware that its agreements would become subject to the Act. Further, it asserts that ample time existed between the enactment of the Act and the effective date for American Saw to terminate its agreement with the Plaintiff. Therefore, by failing to terminate the distributorship, Mechanical Rubber asserts that American Saw implicitly

agreed and acquiesced to the terms of the Act.

 The Court rejects the arguments of Mechanical Rubber on this point. Even though the contract could be modified at any time by either of the parties or terminated at any time by either of the parties, the contract was not modified or terminated by either one of the parties. The fact that a contract may be terminable or modifiable at will does not change the party's rights to expect that the contract will be enforced according to its original terms in the absence of modification or termination. As American Saw contends, to require it to make a showing of "good cause" to terminate the distributorship at this point would impose a new duty with respect to a past transaction and would constitute a retroactive application of the Illinois Franchise Disclosure Act.

Mechanical Rubber also asserts that the Illinois courts have not always followed the harsh view presented in *McAleer* and *Marquette*. It asserts that in *Northwest Lincoln–Mercury v. Lincoln–Mercury Division,* 158 Ill.App.3d 609, 110 Ill.Dec. 633, 511 N.E.2d 810 (1st Dist.1987), the court ruled that in a case arising under the Motor Vehicle Franchise Act, a contract modified after the effective date of the Franchise Act will make that contract subject to the terms of the Franchise Act even though the original contract arose prior to the effective date of the legislation.

In addition, Mechanical Rubber maintains that *McAleer* and *Marquette* are based on the reasoning that a retroactive law impairs the vested rights of the parties or creates a new obligation which would result in an unconstitutional impairment of contractual obligations under Article 1, § 10 of the United States Constitution. It asserts that the "at will" nature of the franchise agreement between the parties in this case vested no rights nor expectations in American Saw.

In response, American Saw notes that the *Northwest Lincoln–Mercury* case should have no application to the present case because the Complaint fails to allege that the parties entered into an amendment or modification to the distributorship agreement which would create a new agreement subsequent to the effective date of § 19 of the Illinois Franchise Disclosure Act. The Court agrees with this point.

As stated earlier, until an at will contract is modified or terminated, the agreement continues under the original contract. Thus, until that contract is terminated or modified, the rights continued to exist. Also, *McAleer* and *Marquette* are based only in part upon the constitutional guarantee against the impairment of obligation of contracts. The cases are also based on a general rule of statutory interpretation.

American Saw makes an alternative argument that Count II should be dismissed. It asserts that Count II contains no allegations which would give rise to the "good cause" requirement under § 19 of the Act. Section 19 provides in part:

> It shall be a violation of the Act to terminate a franchise of a franchised business located in this state prior to the expiration of its term except for good cause.

Ill.Rev.Stat. ch. 121½, ¶ 1719(a).

American Saw contends that the "good cause" requirements apply only where the franchise is terminated prior to the expiration of the agreement's term. It asserts that Count II fails to allege that the franchise agreement was for any definite period or that it was terminated prior to the expiration of its term.

This Court disagrees. There is no support for this argument in the statute. Applying the statute to an "at will" contract would simply mean that the statute would begin to apply after the franchise was once terminated.

**B. American Saw's Motion to Dismiss Count III**

 Count III alleges a claim for breach of contract based on American Saw's termination of the distributorship agreement. American Saw contends that Count III must be dismissed because, under the allegations contained in the Complaint, the distributorship agreement was terminable at the will of either party.

The Plaintiff's Complaint alleges that the course of performance created certain expectancies about the duration of the relationship and, in fact, created an implied promise that the contract would continue so long as the Plaintiff did not breach the contract. Then the Complaint goes on to allege that American Saw breached the contract by terminating the distributorship agreement without cause.

As American Saw notes, absent from Count III is any allegation that the distributorship agreement contained any express term of duration. Under Illinois law, a contract containing no specific term of duration is terminable at will. *H.L. Miller Machinery Tools, Inc. v. Acroloc, Inc.*, 679 F.Supp. 823, 825 (C.D.Ill.1988).

Mechanical Rubber concedes that the contract is terminable at will; however, it asserts that the Seventh Circuit has expressly recognized that a plaintiff may be entitled to damages even where a contract is terminable at will. *P.S. & Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 128–129 (7th Cir.1972). In *Selastomer*, the plaintiff orally agreed to become the exclusive selling agency for the defendant's products. As a result of the agreement, the plaintiff expended money for tooling, hired new personnel, solicited clientele for the defendant's products, and promoted the defendant's products. After approximately three years of the plaintiff's effort, the defendant, without cause, terminated the agreement and invaded the market which the plaintiff had developed.

The plaintiff in *Selastomer* filed suit and the defendant moved to dismiss, alleging that the plaintiff's complaint did not state a claim upon which relief could be granted. Since the agreements between the parties were terminable at will, the trial court granted summary judgment in favor of the defendant. Although the Seventh Circuit agreed that a contract which fails to fix a time for its duration is ordinarily terminable at the will of either party, the court stated that such a contract may not be terminated with impunity. *Id.* at 128. Then the court re-espoused the doctrine first presented in *Fargo Glass and Paint*

*Company v. Globe American Corp.*, 161 F.2d 811, 813 (7th Cir.1947). *Id.* at 128. The court quoted the following language from the *Fargo* case:

> In any case of an indefinite agency, where it is revoked by the principal, if it appears that the agent, induced by his appointment, has in good faith incurred expenses and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principal acted upon by the courts in the circumstances suggested requires no more than that, in every circumstance, *the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly.* (Citation omitted). (Emphasis added).

*Id.*

The Seventh Circuit in *Selastomer* went on to conclude that if Illinois courts were confronted with the situation presented by that case, they would dispose of it as was done in the *Fargo* decision. The court stated that it must be left to the jury to determine, regardless of whether the contract was terminable at will, whether the plaintiff suffered damages as a result of incurring expenses and devoting time and labor and the matter of the agency without being afforded a sufficient opportunity to recoup from the undertaking, as required by *Fargo*. *Id.* at 129.

A similar result was reached by the Seventh Circuit in *Burton v. Hitachi America, Ltd.*, 504 F.2d 721 (7th Cir.1974). In that case, the plaintiff had an oral agreement to sell the defendant's motors within an exclusive Illinois territory. The plaintiff was assured that its relationship with the defendant would "be like a marriage and last forever," and further, that this relationship

was "a matter of mutual trust between the parties." *Id.* at 723. Following expenditures and marketing efforts by the plaintiff, the plaintiff's dealership was terminated. Citing its decision in *Selastomer,* the court ruled that it is not necessary to have an agreement for a specific duration to permit recovery for expenses incurred. *Id.* at 726.

In response, American Saw contends that the theory of recovery available in *Selastomer* is not applicable here because the Complaint fails to allege the existence of an agency relationship between the parties. Further, American Saw correctly notes that in *Fargo, Selastomer,* and *Burton* agency principles were applied because the court was addressing an agency relationship between the parties. In *Fargo,* where the principle was first applied by the Seventh Circuit, the court stated:

> This was not a contract to sell gas ranges to the plaintiff which the plaintiff was then to resell. This was a contract of hiring or of agency.

*Fargo,* 161 F.2d at 813.

In *Selastomer,* the district court granted summary judgment for the defendant. *Selastomer,* 470 F.2d at 128. The district court believed that the *Fargo* holding had been diluted by the subsequent holding in *William J. Lemp Brewing Company v. Ems Brewing Company,* 164 F.2d 290 (7th Cir.1947), which held that a distributorship agreement of no definite duration was terminable at will. The Court of Appeals reversed the district court and reaffirmed *Fargo.* The Seventh Circuit distinguished *Lemp* stating:

> No agency was involved and hence no questions arose as to the agent's good faith incurring of expenses without receiving a reasonable opportunity to recoup those expenses.

*Selastomer,* 470 F.2d at 128.

At oral argument, the parties disputed whether an agency relationship was involved in *Burton.* However, after examining the case, this Court concludes that the parties in *Burton* did in fact have an agency relationship. In summarizing the allegations in the complaint in *Burton,* the Seventh Circuit stated:

> ... this matter was finally submitted for trial by jury some three years later on an amended complaint and three counts charging breach of contract, tortious interference with a contractual relationship, for hiring plaintiff's partner and salesman, Mahoney, and *for conspiracy resulting in the termination of their agency agreement four months after it had begun.*

*Burton,* 504 F.2d at 722 (emphasis added). Later, the Seventh Circuit stated: "These meetings culminated in the determination of plaintiffs to form a separate agency." *Id.* at 723. And, the statement of facts given by the Seventh Circuit reveals that the *Burton* plaintiff was a commissioned sales agent who sold motors on behalf of his principal, Hitachi. *Id.* at 723–724. There is simply no indication in the *Burton* case that the plaintiff was a distributor who purchased products for the defendant for resale. Further, the Seventh Circuit's discussion of *Selastomer* and *Fargo* does not at all suggest that recovery would be allowed in the absence of any agency relationship between the parties. *Id.* at 725–726.

The Court agrees with American Saw that in the present case the distributorship agreement with the Plaintiff was in fact a contract to sell products to the Plaintiff which the Plaintiff was then to resell. Because no agency relationship is alleged, no claim may be predicated upon the Plaintiff's incurring expenses without receiving a reasonable opportunity to recoup those expenses. And, because there is no assertion in this case that this flaw in the Complaint could be corrected by an amendment, Count III must be dismissed on this basis.

Even further, as the court in *First Commodity Traders v. Heinold Commodities,* 591 F.Supp. 812, 823 (N.D.Ill.1984) noted, the *Selastomer* case only holds that upon early termination in some cases a party will be permitted to recover start-up expenses which it has not had time to recoup. The reason for this is because the rule in *Selastomer* and *Burton* is based on quasi-con-

tract. *Id.* at 823. Mechanical Rubber has failed to allege that it has not had a reasonable time to recoup the expenses for starting up. Since it is undisputed that the parties' relationship has gone back almost 25 years, it is fatal to Count III of Mechanical Rubber's Complaint to fail to allege that it has not had a reasonable time to recoup its initial expenses.

In fact, this case is analogous to the *H.L. Miller* case which was discussed earlier. *H.L. Miller*, 679 F.Supp. 823. In that case, the court noted that the situation where a plaintiff attempts to recover for partial performance or reasonable reliance where one party has totally or substantially performed in reliance is distinguishable from the case where the plaintiff was simply terminated under an at will contract. *Id.* at 827. In this case, it would appear that the only possible claim that the plaintiff has sounds in quasi-contract. Since the Plaintiff has only alleged damages of a contractual nature, there could be no recovery unless the Plaintiff could amend Count III to allege damages based upon reliance on American Saw's actions. However, this point is essentially moot since Mechanical Rubber cannot allege an agency relationship upon which to base these damages.

In addition, the *Heinold* court expressed doubt that the rule in *Selastomer* would still be followed in Illinois today because that rule was largely based on quasi-contract and the Illinois Supreme Court held in *La Throp v. Bell Federal Savings and Loan Association*, 68 Ill.2d 375, 12 Ill.Dec. 565, 572, 370 N.E.2d 188, 195 (1977), that, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application. *See, Heinold*, 591 F.Supp. at 823.

### C. American Saw's Motion to Dismiss Count VI

Count VI alleges that American Saw entered into a fraudulent scheme and conspiracy whereby it would acquire Mechanical Rubber's customer list for the purpose of ruining Mechanical Rubber's business and effectuating monopoly power in the central Illinois, Peoria area. More specifically, Me-

chanical Rubber alleges that it was a distributor of the Lenox product line of American Saw for 25 years during which time it created and developed considerable good will with certain customers and users of industrial saw blades through its marketing of the Lenox product line. It alleges that:

4. American Saw regularly and publicly advised Mechanical Rubber and all of its distributors, as well as the industry at large, that it had a policy, plan, and operation to concentrate on "loyalty" establishing a "partnership" and a "bonding" between itself and its distributors, and this policy required distributors' investment in inventory, sales forces, establishment of a customer base, acceptance of American Saw's programs and guidelines.

5. A part of this plan and operation was American Saw's stated purpose of enhancing customer relations with its distributors, such as and including Mechanical Rubber, through improving efficiency, quality control and addressing customer needs.

6. Within the context of this plan and operation, during the summer of 1988 at a trade seminar, Defendant American Saw procured from Plaintiff a customer list of those Mechanical Rubber customers regularly purchasing products from the Lenox product line.

7. Plaintiff, Mechanical Rubber, provided Defendant American Saw with a detailed listing of Plaintiff's customers who regularly purchased from the Lenox line, *based on the understanding that American Saw was acquiring this customer list for the sole and exclusive purpose of enhancing the efficiency of its relationship with the Plaintiff and for the purpose of aiding the Plaintiff in better meeting its customers' needs and demands.*

8. Within the context of American Saw's stated policy, and plan of operation, as well as the context of a 25 year distributor relationship and substantial investment for inventory and sales requirements, Mechanical Rubber relied on American Saw's representation of a prop-

er purpose, express and implied, in obtaining its customer list and such reliance, within that context, was reasonable.

(*See*, Mechanical Rubber's Amended Complaint Count VI, ¶¶ 4–8 and Exhibit A attached to Plaintiff's Amended Complaint (# 17)—an article which supposedly explains how American Saw earns distributor loyalty) (emphasis added). Shortly after obtaining Mechanical Rubber's customer list, on November 19, 1988, American Saw terminated Mechanical Rubber's distributorship. Mechanical Rubber alleges that American Saw knew that its representations, both express and implied, used in acquiring Mechanical Rubber's customer list were false because American Saw knew that it intended to discontinue Mechanical Rubber's distributorship of the Lenox product line after it obtained the customer list, and because American Saw knew that it was going to make Hagerty the sole distributor of the Lenox product line shortly thereafter. Mechanical Rubber alleges that American Saw and Hagerty had entered into an agreement before the acquisition of Mechanical Rubber's customer list whereby Hagerty would be become the sole distributor of the Lenox product line in central Illinois. Thus, Mechanical Rubber alleges that through this fraud American Saw and Hagerty acquired an extremely valuable asset of Mechanical Rubber which they are using to acquire monopoly power and to ruin Mechanical Rubber's business.

American Saw contends that the Complaint fails to allege that it has made any misrepresentations of material fact. American Saw asserts that for a representation to be fraudulent the representation must be an affirmance of fact, not a mere promise, or expression of opinion, or intention. *Carey Electric Contracting v. First National Bank*, 74 Ill.App.3d 233, 30 Ill.Dec. 104, 108, 392 N.E.2d 759, 763 (2nd Dist. 1979); *see also, Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill.App.3d 154, 109 Ill.Dec. 541, 546, 510 N.E.2d 409, 414 (1st Dist.1987); *Spiegel v. Sharp Electronics Corp.*, 125 Ill.App.3d 897, 81 Ill.Dec. 238, 466 N.E.2d 1040 (1st Dist.1984); *North America Plywood Corp. v. Oshkosh Trunk and Luggage Company*, 263 F.2d 543, 545 (7th Cir.1959). American Saw notes that one court stated: "An indefinite statement will not qualify to support an action for fraud." *Marriage of Bower*, 87 Ill.App.3d 324, 42 Ill.Dec. 580, 583, 409 N.E.2d 75, 77 (1st Dist.1980).

However, as Mechanical Rubber notes, there is an exception to the general rule given by American Saw. In the *H.P.I. Healthcare* case, the court stated:

While it is true that misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud (citation omitted), this court has recognized an exception to this rule. *Under this exception, such promises are actionable if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud."*

*H.P.I. Healthcare v. Mt. Vernon Hospital*, 131 Ill.2d 145, 137 Ill.Dec. 19, 29–30, 545 N.E.2d 672, 682–683 (2nd Dist.1979) (emphasis added) (a scheme to defraud was recognized where false statements to future ability of a hospital to pay its debts was made). *Carey Electric Contracting v. First National Bank of Elgin*, 74 Ill. App.3d 233, 30 Ill.Dec. 104, 108, 392 N.E.2d 759, 763 (2nd Dist.1979); *see also, Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977) (a scheme to defraud was recognized where a false statement of the criteria used to evaluate applicants for medical school was made to the applicants in a school bulletin); *Vance Pearson, Inc. v. Alexander*, 86 Ill.App.3d 1105, 42 Ill.Dec. 204, 207–209, 408 N.E.2d 782, 785–787 (4th Dist.1980) (a scheme to defraud was recognized where a promise to install truck scales by a certain date was made with no intention of fulfilling the promise); *Roda v. Berko*, 401 Ill. 335, 340–341, 81 N.E.2d 912, 915–916 (1948) (a scheme to defraud was recognized where a statement that a purchaser of realty intended to use the property for a factory when he actually intended to use the property for a junkyard); *Lovejoy Electronics, Inc. v. O'Berto*, 616

F.Supp. 1464, 1468–1469 (N.D.Ill.1985) (a scheme to defraud was recognized where a promise to give the plaintiff exclusive marketing rights to a computer chip was made with no intention of fulfilling that promise).

Further, the case cited by American Saw for the proposition that a promise cannot serve as a basis for fraud recognizes the scheme to defraud exception as defined in the above cases. *Carey*, 30 Ill.Dec. at 108, 392 N.E.2d at 763. One Illinois court has stated:

Thus, it would seem that *the exception tends to engulf and devour much of the general rule* and lessen any disparity between the Illinois rule and the majority rule as explained by Prosser.

*Vance Pearson*, 42 Ill.Dec. at 209, 408 N.E.2d at 787 (emphasis added).

■ To fall into the exception, the Plaintiff must show: (1) a promise or representation was a deliberate fraud by which a party has been induced to act to his damage; and (2) the existence of the fraud relied upon was shown by something more than just a broken promise. *See, Vance Pearson*, 42 Ill.Dec. at 208, 408 N.E.2d at 786, *citing, Roda*, 401 Ill. at 341, 81 N.E.2d at 916.

■ Mechanical Rubber has not satisfied the first part of the test because, as American Saw contends, Count VI fails to allege that American Saw uttered the statements of company policy to its distributors, potential distributors, and the world at large with the intent to induce Mechanical Rubber to give up its customer list. To constitute fraud a misrepresentation of material fact must be *intentionally* made to induce another party to act in reliance on the truth of the statement. *Hale v. Hale*, 57 Ill.App.3d 730, 15 Ill.Dec. 85, 90, 373 N.E.2d 431, 436 (1st Dist.1978).

However, Mechanical Rubber has alleged that this fraud caused it to act to its damage in that it turned over the customer list to American Saw and that Hagerty Brothers has used the customer list to steal Mechanical Rubber's customers. The fraud alleged in this case is evidenced by several allegations other than the allegations regarding the broken promise, i.e.,

that its customer list has been taken, that its distributorship agreement was terminated, and that another distributor was hired who is using its customer list.

In addition, American Saw argues that a person has not properly pleaded a cause of action for fraud unless he has set forth with specificity what the representations were, when they were made, by whom they were made, and to whom they were made. *Waterford Condominium Association v. Dunbar Corp.*, 104 Ill.App.3d 371, 60 Ill. Dec. 110, 114, 432 N.E.2d 1009, 1013 (1st Dist.1982).

Mechanical Rubber has not responded to this final argument in its response. It alleges only that American Saw regularly and publicly advised Mechanical Rubber and all of its distributors that it had such a policy.

After examining the allegations of fraud, this Court concludes that the representations have not been alleged with sufficient specificity. Mechanical Rubber alleges generally that American Saw made certain representations to it; however, it has not stated specifically when these representations were made or to whom the statements were directed. Mechanical Rubber has simply not sufficiently alleged the circumstances which surrounded the alleged fraud.

Therefore, Count VI is dismissed, and Mechanical Rubber is allowed 21 days to allege an intent to defraud and to allege the fraud with more specificity.

### D. American Saw's Motion to Dismiss Count VII

■ Count VII of the Amended Complaint alleges a cause of action by American Saw and Hagerty Brothers to injure Mechanical Rubber in its business, a cause of action which is recognized in Illinois. *See, James C. Wilborn & Sons, Inc. v. Heniff*, 95 Ill.App.2d 155, 162, 237 N.E.2d 781, 785 (1st Dist.1968); 11 I.L.P. Conspiracy, § 15. The relevant allegations of conspiracy in Count VII state:

8. Beginning in 1988, and continuing to the present time, Defendants, American

Saw and Hagerty, engaged in a conspiracy to injure Plaintiff in its business by one or more of the following acts:

a. American Saw terminated its contractual relationship with Plaintiff, without just cause in violation of Plaintiff's contractual rights.

b. Defendant, Hagerty, induced American Saw to terminate its contract with Plaintiff, as alleged in subparagraph a. above.

c. Defendants, American Saw and Hagerty, entered into an agreement by which Hagerty replaced Plaintiff as the sole distributor of American Saw's "Lenox" line of high quality industrial saw blades.

d. Defendant, Hagerty, contacted Plaintiff's customers and informed them that Plaintiff was no longer the distributor of Lenox saw blades and that Hagerty would in the future be the sole source of Lenox saw blades in central Illinois.

e. Defendant, American Saw, in order to promote the actions of Defendant, Hagerty, as described in subparagraph d. above, provided to Defendant, Hagerty, Plaintiff's client list.

(*See*, Mechanical Rubber's Amended Complaint Count VII, ¶ 8).

American Saw asserts that to allege a conspiracy the Complaint must set forth with particularity the facts and circumstances constituting the alleged conspiracy. It asserts that a complaint which alleges in conclusory fashion that the defendants have "entered into a conspiracy" is not sufficient. *Heying v. Simonaitis*, 126 Ill. App.3d 157, 81 Ill.Dec. 335, 340, 446 N.E.2d 1137, 1142 (1st Dist.1984).

In this case, Mechanical Rubber insufficiently alleges the facts surrounding the alleged conspiracy. Mechanical Rubber must more specifically allege the facts surrounding the nature and purpose of the agreement involved in the alleged conspiracy to state a claim.

Additionally, American Saw contends that to state a cause of action for conspiracy the Complaint must allege facts establishing a combination of two or more persons who act in concert to accomplish some criminal or unlawful purpose, or a lawful purpose through criminal or unlawful means. *Douglass v. Wones*, 120 Ill.App.3d 36, 76 Ill.Dec. 114, 121, 458 N.E.2d 514, 520–521 (2nd Dist.1983). It asserts that, where a complaint fails to allege sufficient facts to state a cause of action for the underlying act on which the conspiracy is based, a cause of action for conspiracy must necessarily fail. *Galinski v. Kessler*, 134 Ill.App.3d 602, 89 Ill.Dec. 433, 436–437, 480 N.E.2d 1176, 1179–1180 (1st Dist.1985).

In response, Mechanical Rubber asserts that 8a of Count VII alleges a breach of contract by American Saw; therefore, American Saw asserts that it has alleged that unlawful acts have been committed in furtherance of the conspiracy.

Since this Court has already determined that Mechanical Rubber has failed to state a claim for breach of contract against American Saw, the breach of contract claim cannot serve as the underlying act on which the conspiracy is based. However, if Mechanical Rubber can later state a claim based upon a scheme to defraud in Count VI, it can state a cause of action for a conspiracy to injure it in its business because it could then show that there was an underlying act of wrongful or tortious conduct. *See, Galinski*, 89 Ill.Dec. at 436, 480 N.E.2d at 1179.

Therefore, Count VII is dismissed, and Mechanical Rubber is allowed 21 days to more specifically allege the facts surrounding the conspiracy.

**E. Mechanical Rubber's Motion for Summary Judgment**

Mechanical Rubber has moved for summary judgment on American Saw's counterclaims (# 26). Count I of American Saw's counterclaim is brought pursuant to the Lanham Trademark Act, 15 U.S.C. § 1125(a). Counts II and III are brought under the Illinois Deceptive Trade Practices Act and the Consumer Fraud and Deceptive Business Practices Act, respectively. Each of the statutory provisions guards against the use of false designations of

origin and false descriptions. Since the elements of these three causes of action are substantially similar and since American Saw's counterclaims focus on the issues of the likelihood of consumer confusion and the "passing off" of goods, these counterclaims are discussed together.

The central issue of these counterclaims is whether Mechanical Rubber's use of boxes with the Lenox trade name on them caused customer confusion regarding the contents of those boxes. Mechanical Rubber's position is that, to mitigate damages after its distributorship was terminated, Mechanical Rubber first attempted to resell the boxes to American Saw. Mechanical Rubber asserts that, after it found that American Saw was not interested in re-acquiring the boxes, it used packaging tape to mask the Lenox name on the boxes, and it wrote a description of the products actually contained in the box on the top of the packaging tape. Mechanical Rubber has submitted seven affidavits attached to its Motion for Summary Judgment in support of this position. Mechanical Rubber contends that there is no question of material fact that would show that their practice of using the boxes with tape over them caused customer confusion. Further, as Mechanical Rubber notes, although the issue of the obliteration of a name has not been squarely addressed by any court, the Seventh Circuit has clearly enunciated its position in "trade dress infringement actions." In *Schwinn Bicycle Company v. Ross Bicycles, Inc.,* 870 F.2d 1176, 1182–1183 (7th Cir.1989), the Seventh Circuit stated:

> In a trade dress infringement action the manufacturer (in this case Schwinn) must establish either that its trade dress has acquired "secondary meaning" (footnote omitted) or that its trade dress is a "distinctive identifying mark." (Citation omitted). The manufacturer must also establish that consumers will be "likely confused" as to the source of the product because of the similarity of the product's appearance. (Citation omitted). Finally, as the district court stated below: "[e]ven if both of ... [the first two] requirements are satisfied ... a plaintiff

[Schwinn] cannot prevail if the alleged appropriated trade dress is found to be functional." (Citation omitted).

In response, American Saw has submitted the affidavits of Dennis L. Neuwrith and George W. Keeley. Mr. Keeley in his affidavit basically states that American Saw offered to re-purchase from Mechanical Rubber "any product that is in saleable condition and in full packages." A letter in support of this is attached to the Keeley affidavit. The Neuwrith affidavit basically states that American Saw was contacted by Caterpillar to advise American Saw of defective Lenox blades. Neuwrith further asserts that when he went to the Caterpillar plant and inspected an American Saw box containing the Lenox trade name and mark, he did not see any tape or other substance on the box obscuring the Lenox name despite the fact that another blade of saw blade was in the box. American Saw has further supported these affidavits with the depositions of Keith Hicks, James Larry Morgan, Wayne William Adams, and Parker Allen Julian.

After examining the affidavits, the depositions and the pleadings, this Court believes that there is a factual dispute regarding whether or not Mechanical Rubber properly covered the boxes in order to avoid confusion as to the source of the saw blades and regarding whether American Saw offered to re-purchase these boxes and other inventory which it sold Mechanical Rubber. Thus, there is a question of fact regarding customer confusion. Therefore, Mechanical Rubber's Motion for Summary Judgment is denied.

## CONCLUSION

The Motion to Reconsider by Mechanical Rubber (# 44) is GRANTED in part and DENIED in part. It is DENIED in part based on the condition that American Saw submit an affidavit by Hagerty Brothers within 14 days of today's date which confirms that it joined in American Saw's Notice of Removal. It is GRANTED in part to the extent that the Order of September 26, 1990 dismissed Plaintiff's claims against Hagerty Brothers. That portion of

said Order is VACATED. Plaintiff's claims against Hagerty Brothers are ordered REMANDED to state court. The Court GRANTS American Saw's Motion to Dismiss (# 19) Counts II and III of Mechanical Rubber's Amended Complaint. The Court also GRANTS American Saw's Motion to Dismiss (# 36) Counts VI and VII of Mechanical Rubber's Amended Complaint. However, Mechanical Rubber has 21 days to submit an Amended Complaint which corrects the defects in Counts VI and VII. Further, the Court DENIES Mechanical Rubber's Motion for Summary Judgment (# 26).