16 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 MEN-GUER CHRYSLER-PLYMOUTH, INC., Plaintiff-Appellee
(92-3923), Defendant-Appellee (92-3924),
v.
CHRYSLER CORPORATION, Defendant-Appellant (92-3923),
Plaintiff-Appellant (92-3924).
 Nos. 92-3923, 92-3924.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1994.
 
 Before: NORRIS and SUHRHEINRICH, Circuit Judges; JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This case stems from an attempt by Chrysler Corporation ("Chrysler") to terminate the franchise of an Ohio automobile dealership operated by Men-Guer Chrysler-Plymouth, Inc. ("Men-Guer"). Chrysler brought this diversity suit asking that the district court enforce an earlier settlement agreement between the parties that the manufacturer alleged governed all aspects of their relationship. For the reasons outlined below, the district court declined Chrysler's invitation and instead dismissed for lack of jurisdiction. Upon review, we conclude that this dismissal was premature and therefore vacate the district court's order and remand the case for further proceedings.
 
 I.
 
 2
 Chrysler first entered into two direct dealership agreements ("DDAs") with Men-Guer in 1964. These agreements contained no expiration date and the relationship between the parties continued for many years. It soured, however, in 1985 when Chrysler informed Men-Guer that, because of Men-Guer's declining sales and poor performance, Chrysler intended to terminate the DDAs.
 
 
 3
 Pursuant to state statute ("Dealers Act"), Men-Guer filed suit in the Ohio court of common pleas to challenge the proposed termination.[1] Chrysler removed the action to federal district court. The district court partially resolved the suit on April 12, 1986, when it ruled that the good cause provision of the Dealers Act did not apply retroactively.[2] Men-Guer Chrysler-Plymouth v. Chrysler Corp., No. C85-3368Y (N.D.Ohio Apr. 12, 1986).
 
 
 4
 The parties subsequently entered into a settlement agreement ("Settlement") that resolved the remaining issues of the lawsuit. The Settlement provided for an extension of the existing DDAs so that Men-Guer could continue to operate its franchise until December 31, 1990. Until that time, Chrysler would treat the franchise like any other except that it would not attempt to terminate the dealer's DDAs for inadequate sales performance. For its part, Men-Guer agreed to waive its right to protest the establishment of an additional Chrysler-Plymouth dealership within a ten-mile radius of its business.[3]
 
 
 5
 The next several years passed uneventfully. On December 19, 1990, the parties elected to continue the DDAs for another year under the terms of the Settlement. As this extension drew to a close, Chrysler proposed extending the DDAs a second time under the following terms:
 
 
 6
 Chrysler is again prepared to extend your Dealer Agreements [DDAs] for a period of two (2) years, until December 31, 1993, OR until Market Motor Company, presently located in Canfield, Ohio, relocates to the Boardman, Ohio area, whichever happens first. This further extension is given subject to all the terms and conditions of your Dealer Agreements and, more specifically, it is also subject in all respects to the provisions of the Settlement Agreement.
 
 
 7
 On February 12, 1992, shortly after this extension took effect, Chrysler informed Men-Guer by letter that it intended to approve Greenwood Nissan, Inc., as the Chrysler-Plymouth dealer in Boardman. Accordingly, Chrysler informed Men-Guer that it could expect to "wrap up its affairs" by the end of the month.
 
 
 8
 Men-Guer promptly protested the establishment of a competing franchise to the Ohio Motor Vehicle Dealers Board ("MVDB"), which in turn notified Chrysler that no new dealership could be established before a hearing was conducted pursuant to O.R.C. Sec. 4517.57 (MVDB shall schedule a hearing concerning Dealers Act protests within 180 days).
 
 
 9
 Chrysler then filed suit in federal court seeking to enforce the Settlement, including liquidated damages in the amount of $1,000 for each day that Men-Guer was deemed to be in breach.[4] The company also filed a Fed.R.Civ.P. 60(b) motion seeking to vacate the dismissal order in the earlier federal court case, ostensibly so that the district court would have jurisdiction to enforce the Settlement.
 
 
 10
 Although it acknowledged that "the court that originally adjudicated the dispute always retains the 'inherent power' to enforce the terms of settlement," the district court refused to do so. It based its decision in part on amendments made to the Dealers Act in 1987 that made it explicitly retroactive.[5] Accordingly, the court determined that the MVDB represented the proper forum and dismissed Chrysler's action for lack of jurisdiction.
 
 
 11
 On appeal, Chrysler contends that the district court erred in retroactively applying the Dealers Act to the Settlement. First, the company asserts that nothing in the language of the statute indicates that the legislature intended that the "same-line" dealership provision have retroactive application. Second, it argues that retroactive application of the good cause requirement for termination of a franchise violates both the Ohio and United States Constitutions.
 
 II.
 
 12
 We begin our inquiry by observing that we review de novo the district court's dismissal for lack of subject matter jurisdiction. Willis v. Sullivan, 931 F.2d 390, 395 (6th Cir.1991).
 
 
 13
 As a preliminary matter, we note that this court will typically consider only arguments raised before the district court. Singleton v. Wulff, 428 U.S. 106, 120 (1976). In its Memorandum and Order dismissing this action, the lower court did not discuss the constitutional implications of applying the Dealers Act retroactively. While Chrysler did not brief its constitutional arguments below, it explicitly reserved the right to do so in a memorandum of law submitted to the district court. In light of this court's discretionary power to reach issues necessary to the proper disposition of the case, Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1455 (6th Cir.), cert. denied, 488 U.S. 880 (1988), we conclude that the issue is properly before us and therefore turn to the statutory provisions in question.
 
 
 14
 Under Ohio law, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Ohio Rev.Code Ann. Sec. 1.48 (Anderson 1993). While Sec. 4517.54, as amended in 1987, clearly contemplates retroactive application, our inquiry does not end there. Section 28, Article II of the Ohio Constitution provides as follows:
 
 
 15
 The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.
 
 
 16
 Ohio courts look to whether the retroactive application of a statute affects substantive or remedial rights when faced with a constitutional challenge. Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 106-07, 522 N.E.2d 489 (1988). Substantive rights are implicated when the statute "impairs or takes away vested rights; affects an accrued substantive right; [or] imposes new or additional burdens, duties, obligations or liabilities as to a past transaction." Id. at 107 (citations omitted). On the other hand, "[a] statute purely remedial in its operation on pre-existing rights, obligations, duties and interests, is not within the mischiefs against which [Section 28, Article II] ... was intended to guard." Id. (citing Rairden v. Holden, 15 Ohio St. 207 (1864)).
 
 
 17
 Because the Ohio Supreme Court has yet to rule on the retroactivity of the Dealers Act, we turn to the intermediate state courts of appeal for guidance. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967). At least one such court has explicitly found that Sec. 4517.54 implicates substantive rights:
 
 
 18
 The provisions at issue are intended to add the substantive requirement in franchise contracts, covered by the [Dealers] Act, that grounds for termination be limited to those specific reasons set forth by statute. That the statutes are substantive is reflected in the decisions in Ohio and elsewhere.
 
 
 19
 Coulter Pontiac, Inc. v. Pontiac Motor Div., 4 Ohio App.3d 169, 171, 446 N.E.2d 1128 (1981). We likewise conclude that Sec. 4517.54 affects substantive, vested rights insofar as it prohibits a manufacturer from terminating a franchise without good cause.
 
 
 20
 In the case before us, the Settlement between the parties clearly contemplated an extension of the DDAs of 1964:
 
 
 21
 During the time between the execution of this Stipulation and December 31, 1990, the parties agree that Men-Guer shall be treated in the same manner by Chrysler as all other Chrysler motor vehicle dealers, except that Chrysler shall not attempt to terminate the Agreements [DDAs] for the continued failure of Men-Guer to attain its Minimum Sales Responsibility, and that their relationship in all other respects shall be governed by the terms and conditions of the Agreements and all amendments to them.
 
 
 22
 Similarly, the two subsequent extensions of this Settlement unequivocally extend the original agreements made between the parties.
 
 
 23
 The statutory provision requiring "good cause" for termination was enacted in 1980, long after the DDAs at issue were finalized. Thus, retroactive application of Sec. 4517.54 would undeniably burden a substantive right negotiated for by Chrysler and would violate Section 28, Article II of the Ohio Constitution.[6]
 
 
 24
 We turn next to Men-Guer's invocation of the "same-line" dealership prohibition contained in Sec. 4517.50 to halt the establishment of a second Chrysler-Plymouth dealership within its market area. Chrysler argues that the MVDB lacked authority to entertain the dealership's appeal because, like the termination provision, Sec. 4517.50 cannot be applied retroactively.
 
 
 25
 In our view, the plain language of Sec. 4517.50 supports this contention. As noted earlier, Ohio statutes are presumed to be prospective. Ohio Rev.Code Ann. Sec. 1.48 (Anderson 1993). The provision at issue contains no language that indicates that the Ohio legislature intended retroactive application. Moreover, the 1987 amendment to the termination provision of the Dealers Act did not affect Sec. 4571.50. Under the circumstances, we can only conclude that the MVDB lacked authority to entertain Men-Guer's protest of a "same-line" dealership within its market area.
 
 
 26
 In sum, the district court's resolution of this controversy based upon a retroactive application of the Dealers Act was misplaced. Accordingly, its dismissal of Chrysler's claim was premature and its conclusion that the MVDB represented the proper forum for this dispute was erroneous.
 
 
 27
 Finally, on appeal Men-Guer levels challenges against the Settlement itself. Among other things, the dealership maintains that the Settlement expired, that any extension was obtained through coercion, and that it was modified by verbal understandings. The district court did not consider the merits of these contentions before dismissing this action, and this court is not in a position to undertake the fact-finding necessary to resolve them.
 
 III.
 
 28
 For the foregoing reasons, the order of the district court dismissing this action is reversed and the matter is remanded for further proceedings consistent with this opinion.
 
 
 29
 JOINER, Senior District Judge, dissenting.
 
 
 30
 In 1980, the State of Ohio enacted the Motor Vehicle Dealers Act, the purpose of which was succinctly stated in In re Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., 1992 WL 246014, at * 2, 1992 Ohio App. 4883, at * 5 (Sept. 24, 1992):
 
 
 31
 The general history of this type of legislation is well documented. Against a backdrop of abusive and unfair franchise practices by the powerful automobile manufacturing industry, the federal government and many states enacted motor vehicle franchise legislation to protect motor vehicle dealers from such abuses and essentially change the balance of economic power between these enterprises. In addition to passing restrictions on the bad faith termination of franchises, many states also enacted legislation which prevents the oversaturation of a franchisee's market area with additional or relocated dealerships of the same brand. Most of these statutes, like Ohio's R.C. 4517.51, plainly restrict the freedom of the manufacturer to place an interbrand competitor within a specified proximity of an existing dealer unless there is "good cause" to do so. Consequently, today the discretion of an administrative agency serves as a check upon the power of the automobile manufacturer to dictate the terms of the franchise relation.
 
 
 32
 (Citations omitted.)
 
 
 33
 Men-Guer and Chrysler entered into their original franchise agreement in 1964, and I agree with the majority that the 1980 Motor Vehicle Dealers Act cannot be applied retroactively to that agreement. However, subsequent to the enactment of the 1980 Act, the parties chose to modify their existing agreement through execution of the 1986 settlement agreement and the 1990 and 1992 extensions thereof. In light of the strong public policy underlying the Motor Vehicle Dealers Act, I would hold that the 1986 settlement agreement and each of the subsequent extensions of that agreement constitute new franchise agreements, independently subject to the provisions of the 1980 Act.
 
 
 34
 When parties to an franchise elect to tinker with their agreement in a substantial way, and there is no question but that they did in this case[1], they do so at the peril of creating a new agreement that must be subject to the provisions of the Act. The Act's application to such modifications is not "retroactive," and poses no problem of state or federal Constitutional law. Moreover, in keeping with Ohio's decision to interpose the authority of an administrative agency to oversee the performance of franchise agreements, I cannot agree with the majority's implicit conclusion that a franchise agreement remains impervious to the provisions of the 1980 Act through indefinite "extensions" of those agreements, even when entered into after 1980.
 
 
 35
 The district court correctly held that the parties' settlement agreement and the extensions of that agreement constituted franchise agreements independently subject to the 1980 Motor Vehicle Dealers Act. I would affirm on that basis. Thus, I respectfully dissent.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Ohio legislature passed the Dealers Act in 1980. At the time that the parties first entered into their franchise agreement in 1964, no statute existed that explicitly governed the relationship between an automobile manufacturer and an authorized dealer
 
 
 [2]
 As it existed at the time that the original dispute arose, O.R.C. Sec. 4517.54 provided that franchises could be terminated only for "good cause." Aggrieved dealers could seek a preliminary and permanent injunction in the court of common pleas to enforce this provision
 
 
 [3]
 The Dealers Act includes a provision that permits dealers to challenge the establishment of a same-line dealership within a ten-mile radius of an existing franchise. Ohio Rev.Code Ann. Sec. 4517.50 (Anderson 1993)
 
 
 [4]
 For its part, Men-Guer filed suit in state court seeking declaratory and injunctive relief. Although not relevant to this appeal, the state court determined that the MVDB was the appropriate forum
 
 
 [5]
 The retroactivity provision reads as follows:
 Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise except for good cause. This section governs any action or intent to terminate, discontinue, or not renew a franchise whether the franchise was entered into prior to or after the effective date of this amendment.
 Ohio Rev.Code Ann. Sec. 4517.54(A) (Anderson 1993) (italics indicate language from 1987 amendment).
 
 
 [6]
 Chrysler also contends that application of the Dealers Act to the Settlement violates the Contract Clauses of both the United States and Ohio Constitutions. Because we resolve this matter on other grounds, we do not reach this issue
 
 
 [1]
 Included in the modifications was Chrysler's express agreement in 1992 to continue Men-Guer's franchise until the occurrence of one of two possible events: the relocation of a specific, named dealer to Men-Guer's area, or the expiration of two years, whichever occurred earlier. Neither event occurred prior to Chrysler's exercise of its claimed right to terminate the franchise just three weeks after entering into this agreement