CAR BUSINESS, INC., D.B.A. HARRY'S RV SALES & SERVICE *v.* FLEETWOOD MOTOR HOMES OF INDIANA, INC.

(No. 83-CV-0151 — Decided June 3, 1985.)

Court of Common Pleas of Clermont County.

*Thomas C. Korbee,* for plaintiff.
*Peter E. Koenig,* for defendant.

RINGLAND, J. On March 3, 1983, plaintiff filed its complaint against defendant pursuant to R.C. Chapter 4517 for alleged violations of R.C. 4517.59 and 4517.63. On May 2, 1983, defendant filed its answer to the complaint. Defendant filed its motion for summary judgment. In support of the motion, defendant submitted two affidavits and two exhibits, plus a deposition for the court's consideration.

Defendant argues in support of its motion that it is entitled to judgment as a matter of law because the agreement between plaintiff and itself was oral, not written, so that the actions under R.C. Chapter 4517 for franchisees are not available to plaintiff, inasmuch as a franchise under R.C. 4517.01(V) is effected only by the execution of a writing. On the other hand, plaintiff argues that the legislature intended to protect all new vehicle dealers, not simply those dealers fortunate enough to have signed a formal franchise agreement. R.C. 4517.01(V) provides:

" 'Franchise' means the written agreement, contract, or understanding between any motor vehicle manufacturer engaged in commerce and any motor vehicle dealer which purports to fix the legal rights and liabilities of the parties to such agreement, contract, or understanding."

A franchisor, under R.C. 4517.01 (X), is:

" * * * [A] new motor vehicle manufacturer or distributor who supplies new motor vehicles under a franchise agreement to a franchisee."

Under R.C. 4517.59, franchisors are prohibited from taking certain actions against their franchisees, the violation of which section entitles the franchisee to certain remedies, including double damages under R.C. 4517.65(A). In this matter, plaintiff has alleged that defendant failed to act in good faith in terminating the "franchise" with plaintiff in violation of R.C. 4517.59(A) and that defendant attempted to coerce plaintiff into accepting vehicles not ordered in violation of R.C. 4517.59(F). Further, plaintiff alleges a violation of R.C. 4517.63 for defendant's failure to reduce to writing terms of the creation, interpretation and termination of the "franchise." If, however, defendant is not a "franchisor" and the relationship between the parties was not a franchise, plaintiff has no cause of action under R.C. 4517.65 and summary judgment in defendant's favor would be warranted. The resolution of the issue depends upon whether the definition of franchise in R.C. 4517.01(V) requires that parties to

a franchise must have executed their agreement in writing.

This question is one of first impression in Ohio, for there are no cases addressing the franchise statute which have construed that the agreement, contract or understanding must be in writing in order to implicate the protections of the statute. Thus, a look to other jurisdictions with comparable statutes is appropriate and helpful. The federal statute which is comparable to the Ohio statute is Section 1221 *et seq.,* Title 15, U.S. Code. Section 1222, Title 15, U.S. Code provides that an automobile dealer may bring suit against an automobile manufacturer for the failure to act in good faith in performing or complying with franchise provisions or in curtailing the franchise with the dealer. Section 1221(b), Title 15, U.S. Code defines the term "franchise" as "the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract." Section 1221(c), Title 15, U.S. Code states that an automobile dealer is one who operates under the auspices of a franchise agreement for the sale of cars or trucks or station wagons. Per definition all automobile dealers are franchisees, and under the definition are always covered by a written agreement. Thus, the federal cases construing the Automobile Dealers' Day in Court Act, Sections 1221-1222, Title 15, U.S. Code, have determined that without a written franchise agreement there can be no claim under the Act, and that oral agreements simply are not covered. *E.g., Stansifer* v. *Chrysler Motors Corp.* (C.A. 9, 1973), 487 F.2d 59, 63-64; *Lawrence Chrysler Plymouth, Inc.* v. *Chrysler Corp.* (C.A. 7, 1972), 461 F. 2d 608, 610, 613; *York Chrysler-Plymouth, Inc.* v. *Chrysler Credit Corp.* (C.A. 5, 1971), 447 F.2d 786; *Artman* v. *International Harvester Co.* (W.D. Pa.

1973), 355 F. Supp. 482, 485; *Joe Westbrook, Inc.* v. *Chrysler Corp.* (N.D. Ga. 1976), 419 F. Supp. 824, 831; *Alfieri* v. *Willys Motors, Inc.* (E.D.Pa. 1964), 227 F. Supp. 627, 629; *Reliable Volkswagen Sales & Serv. Co.* v. *World-Wide Automobile Corp.* (D.N.J. 1963), 216 F. Supp. 141, 143-145. Each of these cases has determined that the *sine qua non* to recovery under the Act is proof of a written contract which purports to fix the legal rights and liabilities of the parties. See *Reliable, supra,* at 144.

To be contrasted with the federal Act, which was enacted in 1956, is the Kentucky statute which was enacted in 1978 and recently amended in 1982. K.R.S. Section 190.010(20) (previously 190.010[18]) provides that "franchise" means "the agreement or contract between any new motor vehicle manufacturer, written or otherwise, and any new motor vehicle dealer which purports to fix the legal rights and liabilities of the parties to such an agreement or contract, and pursuant to which the dealer purchases and resells the franchise product." No Kentucky case law construing the application of this definition and the Act apparently exists.

However, the plain meaning of the definition of franchise "written or otherwise," expressly demonstrates that verbal contracts or agreements are included in the protection of the statute. The Kentucky statutory scheme should be contrasted to the Ohio scheme where a franchise is a "written agreement, contract, or understanding * * *" and to the federal Act where a franchise is a "written agreement or contract."

At 1956 U.S. Code Cong. & Admin. News 4596, 4601, the House Report on the federal Act explains that the definition of franchise adopted by the House and passed into law was a more narrow definition than that approved by the Senate:

"Section 1(b) of the bill defines 'franchise' to mean the written agree-

ment or contract between an automobile manufacturer and dealer. The bill approved by the Senate gives broader meaning to the term 'franchise' by including not only the written agreement or contract but also any 'understanding or arrangement between any automobile manufacturer and any automobile dealer.' The words 'understanding or arrangement' have been deleted in order to safeguard against the possible inclusion of anti-competitive trade arrangements between the manufacturer and the dealer, such as arrangements which might limit the location of new dealers."

No doubt, the 1980 Ohio General Assembly should have been aware of the reasoning behind the House of Representatives' deletion of the words "understanding or arrangement." Nonetheless, the General Assembly included the term "understanding" in its definition of "franchise," so that even a framework or scheme for business comprised of merely an "understanding" would be included in the protection of the franchise statutes. Had the General Assembly meant to eliminate verbal understanding from the definition of "franchise" it could have omitted the term "understanding" from such definition and followed the federal definition more closely.

R.C. 1.11 (liberal construction of remedial law) is perhaps most illuminating concerning the construction of written agreement, contract, or understanding. R.C. 1.11 states:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws; but this section does not require a liberal construction of laws affecting personal liberty, relating to amercement, or of a penal nature."

The term "remedial statute" is applied to Acts relating to the remedy as distinguished from those relating to substantive rights. The Supreme Court of Ohio has acknowledged that it is doubtful if a perfect definition of remedial law could be devised. *State, ex rel. Holdridge,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 175 [40 O.O.2d 162]. However, most courts agree that remedial law prescribes methods of enforcement of rights or of obtaining redress. *Id.* Thus, R.C. Chapter 4517, which sets forth remedies and means of recovery for franchisees who have been mistreated by their franchisors, including the definition of franchise contained in R.C. 4517.01(V), is remedial and is therefore to be liberally construed to promote said remedies and means. That is, parties that have franchises, regardless of whether they are written or verbal, under the liberal construction rule, would have the protection of this remedial section. Liberally construing, therefore, "written agreement, contract, or understanding" to promote its object and assist the parties in obtaining justice would require that "written" modify the word "agreement" only and not the word "contract" or "understanding," therefore, this permits verbal contracts or verbal understandings for franchises. See, also, *Brown* v. *Commrs. of Belmont Cty.* (1916), 5 Ohio App. 394.

Therefore, notwithstanding the federal or Kentucky statute, the court finds that under the Ohio statutory franchise scheme, a franchise need not be created by a written instrument, but may be created by a verbal understanding. Thus, the motion for summary judgment is not well-taken and is overruled, the defendant not being entitled to judgment as a matter of law.

*Motion for summary judgment overruled.*