**In re KERRY FORD, INC.\* (Two Cases.)**

[Cite as *In re Kerry Ford, Inc.* (1995), 106 Ohio App.3d 643.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APE10–1569, 94APE10–1570.

Decided Sept. 29, 1995.

\* Reporter's Note: Discretionary appeals to the Supreme Court of Ohio were not allowed in (1996), 75 Ohio St.3d 1404, 661 N.E.2d 754, and 75 Ohio St.3d 1422, 662 N.E.2d 25.

644

*Gates T. Richards Co., L.P.A.,* and *Gates T. Richards; Eichel & Krone* and *Paul W. Krone,* for appellant Kerry Ford, Inc.

*Barron, Peck & Bennie* and *Norman I. Barron,* for appellant Williams Ford Sales, Inc.

*Baker & Hostetler, George W. Hairston* and *Jerri H. Stewart,* for appellee Ford Motor Company.

———

DESHLER, Judge.

This is an appeal by appellants, Kerry Ford, Inc. ("Kerry Ford") and Williams Ford Sales, Inc. ("Williams Ford"), from a judgment of the Franklin County Court of Common Pleas, granting a motion to dismiss in favor of appellee, Ford Motor Company ("Ford"), for lack of jurisdiction.

Appellants have filed separate briefs and each raise one assignment of error for review.[1] The brief of Kerry Ford sets forth the following assignment of error:

"The trial court erred to the prejudice of protestant appellant in granting the motion to dismiss on constitutional grounds and not rendering a decision on the merits."

Williams Ford asserts the following assignment of error:

"The trial court erred in dismissing appellant's appeal due to lack of jurisdiction."

This action arose out of a decision of the Motor Vehicle Dealers Board ("board"), finding that Ford had established good cause to relocate one of its franchisees, R.S. Ford, Inc. ("R.S. Ford"). On June 1, 1972, Ford entered into separate sales and service agreements with two of its franchisees, appellants Williams Ford and Kerry Ford. The sales and service agreements set forth the respective rights and duties of the parties, including provisions for the franchisor to determine the numbers, locations and sizes of authorized dealers within and without the dealer's locality, and to appoint additional dealers within or without a dealer's locality, except that, if an additional dealer would be within ten miles of the dealer's principal place of business, a study must reasonably demonstrate, in the franchisor's opinion, that such an appointment is necessary.

In 1980, the Ohio legislature passed what is commonly referred to as the Motor Vehicle Dealers Act. One of the provisions of the Act, R.C. 4517.50, sets forth

———

1. A brief filed by the Ohio Motor Vehicle Dealers Board was ordered stricken from the file by this court in a journal entry filed January 31, 1995, on the basis that the board was not a party to this appeal.

certain requirements in the event that a franchisor seeks to relocate an existing new motor vehicle dealer.

R.C. 4517.50 provides in pertinent part:

"(A) Except as provided in division (C) of this section, when a franchisor seeks to enter into a franchise to establish an additional new motor vehicle dealer in, or relocate an existing new motor vehicle dealer at a location in, a relevant market area where the same line-make of motor vehicle is then represented, the franchisor shall first give notice in writing, by certified mail, to the motor vehicle dealers board and to each franchisee of such line-make in the relevant market area of the franchisor's intention to establish an additional new motor vehicle dealer in, or relocate an existing new motor vehicle dealer at a location in, that relevant market area. Each notice shall set forth the specific grounds for the proposed establishment of an additional motor vehicle dealer or relocation of an existing motor vehicle dealer. Within fifteen days after receiving the notice, or within fifteen days after the conclusion of any appeal procedure provided by the franchisor, whichever is later, the franchisee of the same line-make may file with the board a protest against the establishment or relocation of the proposed new motor vehicle dealer. When such a protest has been filed, the board shall inform the franchisor that a timely protest has been filed and that a hearing is required pursuant to section 4517.57 of the Revised Code. * * *

"(B) No franchisor shall establish an additional new motor vehicle dealer or relocate an existing new motor vehicle dealer before giving notice as required in division (A) of this section or before the holding of a hearing on any protest filed under this section, and no franchisor shall establish or relocate such a dealership after the hearing if the board determines that there is good cause for not permitting the new motor vehicle dealer to be established or relocated."

Thus, under R.C. 4517.50, a franchisor who seeks to relocate an existing new motor vehicle dealer in a relevant market area where the same line-make of motor vehicle is then represented must first give notice, in writing, to the board and to any existing franchisee in the relevant market area regarding such intention. In the event an existing franchisee protests the proposed relocation, a hearing on the matter is to be held; a franchisor may not relocate a dealership after the hearing if the board determines that there is good cause for not permitting such dealership to be relocated.

In April 1991, Ford notified Williams Ford and Kerry Ford that it intended to relocate an existing Ford dealership, R.S. Ford, from its location at 421 Loveland–Madeira Road, Loveland, Ohio, to the Kings Auto Mall, Cincinnati, Ohio, within a ten-mile relevant market area. In May 1991, Williams Ford and Kerry Ford both filed protests to the proposed relocation of R.S. Ford. The board set a hearing date and the matter came before a hearing examiner of the board.

The hearing examiner subsequently issued a report, concluding that Ford had not established good cause, pursuant to R.C. 4517.50, to relocate R.S. Ford. Objections were filed to the report of the hearing examiner. The board issued a decision on May 12, 1993, overruling the recommendation of the hearing examiner and determining that good cause existed for the relocation of R.S. Ford.

On May 24, 1993, appellants filed notices of appeal with the trial court from the decision of the board. The cases were consolidated before the trial court. Ford subsequently sought dismissal of the action on the basis that the board lacked jurisdiction to entertain protest actions under R.C. 4517.50 where the franchisor and franchisee entered into a franchise agreement prior to the enactment of the statute. By entry filed October 3, 1994, the trial court granted dismissal, finding that the board lacked jurisdiction to hear appellants' protest actions. More specifically, the trial court concluded that R.C. 4517.50, dealing with requirements for the relocation of an existing franchise, could only be applied prospectively.

The arguments raised under appellants' assignments of error are interrelated and will be considered together. The primary issue before this court is whether the trial court erred in holding that R.C. 4517.50 cannot be applied retroactively.

Under Ohio law, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, 495, the Ohio Supreme Court set forth the method of determining whether a statute may be applied retrospectively, holding that:

"The issue of whether a statute may *constitutionally* be applied retrospectively does not arise unless there has been a prior determination that the General Assembly has specified that the statute so apply. Upon its face, R.C. 1.48 establishes an analytical threshold which must be crossed prior to inquiry under Section 28, Article II. As we pronounced in *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339, 503 N.E.2d 753, 756, where 'there is no clear indication of retroactive application, then the statute may *only* apply to cases which arise subsequent to its enactment.'" (Emphasis *sic*.)

In the present case, the trial court held that R.C. 4517.50 could only be applied in a prospective manner. Specifically, the court held in pertinent part:

"Based upon this Court's interpretation of the relevant statutes, this Court finds that the relocation statutes upon which this appeal is based may only be applied prospectively. First, the statutes do not contain language expressly making them retroactive, as required by R.C. 1.48.

"Second, it is clear that the legislative intent was for the relocation statutes to only operate prospectively. Through its 1987 amendments, the legislature specifically amended only certain sections of the Motor Vehicle Dealers Act to include

language making them expressly retroactive; namely, §§ 4517.54, 4517.56, and 4517.59. It is important to note that, in its amendments, the legislature did not include express retroactive language in the relocation statutes. Therefore, it is clear that, because the legislature added express retroactive language to the three other statutes and not to the relocation statutes, the legislature intended the relocation statutes to only be applied prospectively."

In its decision, the trial court also noted that other courts have previously held that R.C. 4517.50 could not be applied retroactively. One of the cases cited by the trial court, *Men–Guer Chrysler–Plymouth, Inc. v. Chrysler Corp.* (Jan. 12, 1994), C.A.6, Nos. 92–3923 & 3924, unreported, 1994 WL 7609, involved two sections of the Act, R.C. 4517.54 and 4517.50. In *Men–Guer*, the Sixth Circuit Court of Appeals held that R.C. 4517.54, as amended in 1987, clearly contemplated retroactive application.[2] The court further found, however, that R.C. 4517.54 affected substantive, vested rights "insofar as it prohibits a manufacturer from terminating a franchise without good cause."

The court then addressed the argument of appellant, Chrysler Corporation, that R.C. 4517.50 could not be applied retroactively. The court in *Men–Guer* agreed with the appellant, holding that:

"In our view, the plain language of § 4517.50 supports this contention. * * * Ohio Statutes are presumed to be prospective. Ohio Rev.Code Ann. § 1.48 * * *. The provision at issue contains no language that indicates that the Ohio legislature intended retroactive application. Moreover, the 1987 amendments to the termination provision of the Dealers Act did not affect § 4517.50. Under the circumstances, we can only conclude that the [Motor Vehicle Dealer Board] * * * lacked authority to entertain Men–Guer's protest of a 'same-line' dealership within its market area."

 We agree with the trial court's determination that R.C. 4517.50 may only be applied prospectively. In the absence of explicit language permitting retroactive application, a statute must be presumed to operate prospectively. *Viers v. Dunlap* (1982), 1 Ohio St.3d 173, 174, 1 OBR 203, 204, 438 N.E.2d 881, 882–883. R.C. 4517.50 does not contain any clear or express language indicating that the General Assembly intended the provisions to be applied to automobile franchise agreements executed prior to its effective date. Thus, the trial court did not err in declining to give retroactive effect to the statute and we hold, as did

---

**2.** The retroactive language contained in R.C. 4517.54(A) provides:

"Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise except for good cause. This section governs any action or intent to terminate, discontinue, or not renew a franchise whether the franchise was entered into prior to or after the effective date of this amendment."

the trial court, that R.C. 4517.50 applies prospectively to motor vehicle franchise contracts entered after the effective date of the statute.

We make clear that we do not hold that other portions of the Act could never be applied to preexisting franchise agreements; rather, the limited issue we decide is whether the legislature intended R.C. 4517.50 to be applied retroactively. As noted by the trial court, certain portions of the Act, apart from the relocation provisions, have been amended to include language expressly indicating that they are to be given retroactive application.

Appellant Williams Ford contends that R.C. 4517.50 is merely a procedural statute which is remedial in nature and thus may be applied in a retroactive manner. Williams Ford also contends that the trial court's failure to apply the statute to franchisees who entered into franchise agreements prior to the date the statute was enacted raises equal protection concerns.

■ Based upon our determination that R.C. 4517.50 fails to meet the threshold analysis set forth under R.C. 1.48, we "need not, and may not, engage in constitutional analysis of whether such enactment is 'substantive' or 'procedural' in nature." *Warren Cty. Bd. of Commrs. v. Lebanon* (1989), 43 Ohio St.3d 188, 190, 540 N.E.2d 242, 244, citing *Van Fossen, supra,* 36 Ohio St.3d at 105–106, 522 N.E.2d at 495–496. See, also, *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434. We further note that, while Williams Ford raises, on appeal, an issue regarding the constitutionality of the statute, neither Williams Ford nor Kerry Ford raised equal protection arguments before the trial court and the trial court's decision was not predicated upon the constitutionality of the statute. Appellants' equal protection arguments, which were neither raised by appellants nor passed upon by the trial court, are not properly before this court.

Williams Ford also contends that, prior to the enactment of R.C. 4517.50, a predecessor statute, R.C. 1333.71 *et seq.,* enacted in 1971, set forth certain restrictions, rights and obligations of franchised motor vehicle dealers and their franchisors. Williams Ford asserts that the essence of the contractual rights, duties and obligations are the same under both R.C. 1333.72 and 4517.50, and that the latter statute merely reiterates and expounds upon the predecessor statute. We disagree.

The predecessor statute relied upon by Williams Ford, R.C. 1333.72(H), provided in part that no manufacturer shall:

"Coerce, or attempt to coerce, a dealer by threatening to award an additional franchise or agreement to another person for the sale of its same product in the same area of influence for the purposes of compelling such dealer to yield to demands of the manufacturer for increased sales of manufacturer's products,

parts, expansion of facilities and improvement of operations inconsistent with good business practices of the dealer * * *."

The new dealer statute, effective March 14, 1980, replaced an earlier "Dealers Act" which went into effect in 1971; at the time R.C. 4517.50 *et seq.* was enacted, prior Revised Code sections applicable to motor vehicle dealership agreements were either amended and renumbered or repealed. See *Coulter Pontiac, Inc. v. Pontiac Motor Div.* (1981), 4 Ohio App.3d 169, 170, 4 OBR 269, 270–271, 446 N.E.2d 1128, 1130. Former R.C. 1333.72(H), cited above, was renumbered under R.C. 4517.59(G) and the provision remains substantially the same in its amended form.

The statute at issue in the instant case, however, R.C. 4517.50, was newly enacted in 1980 and, contrary to the contention of Williams Ford, does not merely reiterate and expound upon R.C. 1333.72. Prior to the enactment of R.C. 4517.50, a franchisor seeking to relocate an existing new motor vehicle dealer in a relevant market area where the same-line of motor vehicle was represented was not required, pursuant to notice and hearing directives, to carry the burden of establishing "good cause" for the proposed relocation. Under the terms of the franchise agreements entered into between Ford and its franchisees prior to R.C. 4517.50, Ford specifically reserved "the right to determine, from time to time, in its best judgment, the numbers, locations and sizes of authorized dealers"; thus, Ford bargained for the right to relocate dealers based upon its business acumen. R.C. 4517.50, which imposes additional duties upon the franchisor and affects existing rights the franchisor enjoyed under franchise agreements entered into prior to the enactment of the statute, is substantially different from the provisions of the predecessor statute cited by appellants. See, *e.g., Coulter Pontiac, supra,* 4 Ohio App.3d at 170, 4 OBR at 270–271, 446 N.E.2d at 1130 (earlier Act imposed much narrower limitations on the rights of franchisors).[3]

■ Both appellants raise estoppel arguments, arguing that Ford waived its right to challenge the board's authority to hear appellants' protests because, it is contended, Ford initiated the administrative proceedings and then later sought summary judgment on jurisdictional grounds. We disagree with appellants' characterization of the proceedings. While Ford sent written notice to appellants and the board regarding the proposed relocation of R.S. Ford, as required pursuant to R.C. 4517.50, the appellants initiated the administrative proceeding before the board by filing protest actions with the board. See *Slavin Ford, Inc.*

---

3. In *Coulter Pontiac,* 4 Ohio App.3d at 171, 4 OBR at 272, 446 N.E.2d at 1130–1131, the court held that R.C. 4517.54, which provides, in part that "no franchisor shall terminate or fail to continue or renew a franchise except for good cause," was a substantive statute inasmuch as, under the new dealer statutes, it "now requires that franchise contracts made after the statutory effective date can be terminated only upon the grounds defined by statute."

*v. Ford Motor Co.* (Aug. 1, 1991), Franklin App. No. 91AP–354, unreported, 1991 WL 151252 (franchisor's withdrawal of notice of termination did not deprive board of jurisdiction since it was franchisee which invoked jurisdiction of board by filing protest). Thus, we reject appellants' arguments that Ford should be estopped from challenging the board's jurisdiction based upon the contention that Ford initiated the proceedings.

Even assuming that we agreed with appellants' contention that Ford invoked the jurisdiction of the board, appellants' estoppel argument is without merit. It is well settled that lack of subject-matter jurisdiction may be raised at any stage of the proceedings. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537. Parties may not, by stipulation or agreement, confer subject-matter jurisdiction on a court or administrative body where such jurisdiction does not otherwise exist. *Id.* See, also, *Gates Mills Invest. Co. v. Parks* (1971), 25 Ohio St.2d 16, 54 O.O.2d 157, 266 N.E.2d 552. Further, " '[i]t is a fundamental proposition that just as parties cannot confer subject matter jurisdiction by consent, subject matter jurisdiction cannot be acquired based upon a theory of estoppel or waiver arising from the acts of the parties or their agents.' " *Gaston v. Bd. of Review* (1983), 17 Ohio App.3d 12, 14, 17 OBR 58, 61, 477 N.E.2d 460, 463. See, also, *Gates Mills, supra,* 25 Ohio St.2d at 19–20, 54 O.O.2d at 158–159, 266 N.E.2d at 554–555 (failure of litigant to object to subject-matter jurisdiction at first opportunity is undesirable and procedurally awkward but does not give rise to a theory of waiver which would have the force of investing subject-matter jurisdiction in a court which has no jurisdiction).

Finally, appellants contend that the court erred in failing to consider subsequent amendments to the 1972 sales and service agreements. Appellants contend that these amendments sufficiently modified the original agreement to bring Ford under the provisions of R.C. 4517.50. Specifically, Kerry Ford points to a 1989 document which, it contends, changes the relationship and obligations of the parties.

We are unpersuaded. Not every amendment to an agreement constitutes a new agreement; the issue is not whether any changes were made to a contract but rather whether existing rights were significantly altered. *McKay Nissan, Ltd. v. Nissan Motor Corp. U.S.A.* (N.D.Ill.1991), 764 F.Supp. 1318, 1319.

The document at issue is a customer service bulletin which states that it is issued under the dealer's sales and service agreement and that it should be filed with such agreement. Customer service bulletins were explicitly referenced and contemplated in the original sales and service agreement to be furnished "to the Dealer from time to time by the Company establishing standards for authorized Ford dealers with respect to service personnel, training, tools and equipment, for

customer handling procedures and for evaluating the Dealer's service performance."

The service bulletin referenced by Kerry Ford involves such service concerns, including matters involving staffing, training, and complaint handling. The bulletin also discusses the franchisor's and franchisee's respective duties under the then-recently enacted Ohio Lemon Law. Nothing in the service bulletin at issue indicates a significant or material alteration of the sales and service agreement which would demonstrate that the parties entered into a new agreement. Thus, appellants' contentions that amendments to the sales and service agreement created a new contract are not well taken.

Based upon the foregoing, appellants' assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and JOHN C. YOUNG, J., concur.

JOHN C. YOUNG, Judge, concurring.

I concur in the majority opinion and make the following additional comments.

Appellants, Kerry Ford and Williams Ford, are parties to existing franchise agreements with appellee, Ford. These franchise agreements, into which the parties entered in June 1972, contain language relating to the rights of the parties in the event Ford decides to appoint a new dealer within ten miles of an existing dealer. Applying R.C. 4517.50 retroactively, as appellants would have us do, would impose additional duties upon Ford and would affect existing rights enjoyed by Ford under the franchise agreements with appellants. To apply R.C. 4517.50 retroactively would give the franchise agreements between appellants and Ford different legal effect from that which they had under the law when those franchise agreements were executed.

Without express legislative intent, statutes are presumed to be prospective in operation. R.C. 4517.50 does not contain any express language indicating that the General Assembly intended that the provisions be applied to franchise agreements executed prior to its effective date, and to do so would alter the contractual rights of the parties involved.