HAL ARTZ LINCOLN–MERCURY, INC., Appellant,

v.

OHIO MOTOR VEHICLE DEALERS BOARD et al., Appellees.

FORD MOTOR COMPANY, Appellant,

v.

OHIO MOTOR VEHICLE DEALERS BOARD et al., Appellees.

[Cite as *Hal Artz Lincoln–Mercury, Inc. v. Ohio Motor Vehicle Dealers Bd.* (1997), 118 Ohio App.3d 501.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 96APE02–247, 96APE02–248 and 96APE04–478.

Decided Feb. 27, 1997.

502

*Crabbe, Brown, Jones, Potts & Schmidt, James D. Gilbert* and *Donald S. Simon,* for appellant Hal Artz Lincoln–Mercury, Inc.

*Betty D. Montgomery,* Attorney General, and *Chester T. Lyman, Jr.,* Assistant Attorney General, for appellee Ohio Motor Vehicle Dealers Board.

*Baker & Hostetler, Elizabeth A. McNellie, George W. Hairston* and *Anthony J. Franze; Thompson, Hine & Flory* and *Lisa A. Lomax; Dykema & Gossett, P.L.L.C.,* and *Joseph A. Ritok, Jr.;* and *David R. Kelleher,* for appellant Ford Motor Company.

*Dworken & Bernstein Co., L.P.A.,* and *David J. Richards, Jr.,* for intervenor K & B Lincoln-Mercury, Inc.

---

JOHN C. YOUNG, Judge.

This appeal involves three consolidated cases. The history of these cases is as follows: In 1972, Ford Motor Company ("Ford") and Hal Artz Lincoln–Mercury, Inc. ("Artz") entered into a sales and service agreement ("agreement"). In 1980, R.C. 4517.50 was enacted as part of the Ohio Motor Vehicle Dealers Act ("Act"). R.C. 4517.50 provides that a dealer may protest a planned relocation of another dealer, if such relocation is in the same relevant market area as the protesting dealer.

In 1990, Ford informed Artz that it intended to relocate K & B Lincoln–Mercury, Inc. ("K & B") within approximately five and one-half miles [1] of Artz. For simplicity's sake we will refer to this case as *"Artz I."* Artz filed a protest with the Motor Vehicle Dealers Board ("board") pursuant to R.C. 4517.50. The board sustained Artz's protest, and rejected the proposed relocation of K & B. The court of common pleas affirmed. This court reversed in *In re Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (Sept. 24, 1992), Franklin App. No. 91AP–1493, unreported, 1992 WL 246014, and remanded the matter to the board.

---

1. According to Ford's brief in case No. 96APE04–478, the new location would be 5.6 direct miles, measured on a scale map, from Artz, and 6.8 driving miles from Artz.

On remand, the board again sustained Artz's protest on October 15, 1993. Again, an appeal to the court of common pleas was taken, and Judge Fais affirmed the board's order by a decision dated December 1, 1994.[2] Unfortunately, an entry to this effect did not go on until March 18, 1996. This is important, insofar as motions to dismiss were filed in the interim.

In the meantime, in December 1993, Ford proposed another relocation site for K & B that was approximately eighteen hundred feet from the earlier proposed site. We will refer to this action as "*Artz II.*" Again, Artz filed a protest with the board. However, this time, in February 1994 Ford moved to dismiss the protest, arguing that the board did not have subject matter jurisdiction because the parties' franchise agreement was executed in 1972, prior to the enactment of R.C. 4517.30 *et seq.* Therefore, Ford moved to dismiss, arguing that the Act did not apply retroactively to franchise agreements predating the 1980 enactment. Hearing Examiner Blaugrund agreed and granted Ford's motion to dismiss. Artz appealed to the court of common pleas, and, on January 10, 1996, Judge Stratton affirmed the dismissal.[3] The appeal of Judge Stratton's decision is case No. 96APE02–247.

On November 1, 1994, Ford filed a similar motion to dismiss with Hearing Examiner Carter. It should be noted that this motion was filed *before* Judge Fais put on his December 1, 1994 decision. The parties state that *Artz I* was still pending on the issue of attorney fees and expenses, although it appears to this court that if the motion to dismiss was filed *before* Judge Fais put on his decision and entry, the entire matter was still pending. In fact, Hearing Examiner Carter addressed the entire matter; his decision is not limited to attorney fees and expenses.

In his decision, Hearing Examiner Carter recommended that the motion to recover legal expenses and fees be dismissed, that the October 15, 1993 decision and order of the board be rescinded, and that the protest in *Artz I* be dismissed for lack of jurisdiction. It should be noted that the October 15, 1993 order of the board is the order that Judge Fais had before him on appeal. On April 19, 1995, the board adopted Hearing Examiner Carter's recommendation in full. Again, it should be noted that this occurred *after* Judge Fais's December 1, 1994 decision, but *before* his March 18, 1996 entry.

Artz appealed the April 19, 1995 order of the board to the court of common pleas, and this appeal went before Judge Pfeiffer. Judge Pfeiffer affirmed the

---

**2.** See *Ford Motor Co. v. Hal Artz Lincoln–Mercury, Inc.* (Dec. 1, 1994), Franklin C.P. No. 93CVF–10–7662, unreported.

**3.** See *Hal Artz Lincoln–Mercury, Inc. v. Motor Vehicle Dealers Bd.* (Jan. 10, 1996), Franklin C.P. No. 94CVF–09–6710, unreported.

board's order,[4] dismissing *Artz I* for lack of subject matter jurisdiction, on January 30, 1996, *before* Judge Fais's March 18, 1996 entry. The appeal of Judge Pfeiffer's decision is case No. 96APE02–248.

The third appeal before this court is case No. 96APE04–478. This appeal stems from the March 18, 1996 entry of Judge Fais. Ford appealed this entry because Judge Fais ultimately affirmed the October 15, 1993 order of the board. This October 15, 1993 order is the same order that was later rescinded for lack of subject matter jurisdiction by the board on April 19, 1995, which rescission was affirmed by Judge Pfeiffer on January 30, 1996. Clearly, this rescission occurred before Judge Fais's entry on March 18, 1996; thus, the appeal from Judge Fais's entry would appear to be moot should this court affirm the decision of Judge Pfeiffer.

On appeal, these three cases have been consolidated, and Artz sets forth the following assignments of error and issues for our review:

"First Assignment of Error

"The trial court erred in affirming the decision of the Ohio Motor Vehicle Dealers Board granting appellee's motion to dismiss because there were material alterations to the 1972 franchise agreement after 1980 which rendered the Ohio Motor Vehicle Dealers Act applicable to the case at bar.

"First Issue Presented Under the First Assignment of Error

"Ford's acceptance and consent to the 1983 stock transfer of 39% ownership in Hal Artz Lincoln Mercury to Mr. Phillip Artz constituted a material alteration to the original 1972 franchise agreement sufficient to render the 1980 Ohio Motor Vehicle Dealers Act applicable to the parties['] contractual relationship.

"Second Issue Presented Under the First Assignment of Error

"The Lincoln and Mercury dealer sales and service agreement dated September, 1991, significantly and materially altered the relationship between appellant and appellee subsequent to 1980.

"Third Issue Presented Under the First Assignment of Error

"The April 23, 1991 change in the vehicle terms of sale bulletin changing the holdback percentage from two percent (2%) to three percent (3%) represents a significant change in the relationship between appellant and appellee.

"Second Assignment of Error

---

4. See *Hal Artz Lincoln–Mercury, Inc. v. Ohio Motor Vehicle Dealers Bd.* (Jan. 30, 1996), Franklin C.P. No. 95CVF–04–2964, unreported.

"The courts below erred because the board's decisions were neither supported by reliable, probative, and substantial evidence, nor in accordance with law.

"First Issue Presented for Review under Second Assignment of Error

"The board has subject matter jurisdiction to hear Artz's protest because, *inter alia*, the requirement that Ford accept and consent to the 1983 stock ownership transfer constituted a material alteration rendering the 1980 Act applicable to the case at bar."

In case No. 96APE04–478, Ford sets forth the following assignments of error:

"1. The Ohio Motor Vehicle Dealers Board had no jurisdiction over the protest. [Issue of first impression on appeal; consequently, not addressed in record].

"2. The Common Pleas Court abused its discretion by affirming the Motor Vehicle Dealer[s] Board's decision which (1) ignored this Court's specific instructions; (2) failed to make specific findings of fact to justify its conclusion of law; (3) failed to properly apply the statutory factors as ordered by this Court; (4) was arbitrary and capricious; and (5) was not supported by competent, reliable and probative evidence and which was contrary to the great weight of evidence as well as the Board's earlier findings of fact. [R. 28].

"3. The Common Pleas Court erred by failing to follow this Court's direction to decide Ford's claim that the Board's order and Ohio Revised Code §§ 4517.50 *et seq.* are contrary to and violate federal antitrust laws and policies. [R. 28].

"4. Ohio Revised Code Section 4517.50 *et seq.* and the Common Pleas Court's decision affirming the Board's order, violate federal antitrust laws and policies. [Raised in Ford's briefs to Common Pleas Court, R. 18 and R. 22, but not addressed in Decision from which appeal arises, R. 28]."

We will first address the assignments of error set forth by Artz. Artz essentially asks this court to find that the several alterations to the 1972 agreement constitute material alterations, such that the agreement between the parties constitutes a new agreement that is subject to the 1980 Act.

In an administrative appeal brought pursuant to R.C. 119.12, the court of common pleas must affirm an order of an administrative agency if the order is supported by reliable, probative and substantial evidence, and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. On appeal to this court, our court's review is further limited to determining whether or not the trial court abused its discretion in its review of the agency's order. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 27 OBR 254, 500 N.E.2d 362; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280, paragraph three of the syllabus.

On the question of whether the agency's order is in accordance with law, our review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

■ Initially this court notes that Artz's arguments regarding estoppel and waiver are not well taken. Subject matter jurisdiction cannot be waived. See *State ex rel. Riehl v. Malone* (1994), 94 Ohio App.3d 448, 640 N.E.2d 1197; *Gaston v. Bd. of Review* (1983), 17 Ohio App.3d 12, 17 OBR 58, 477 N.E.2d 460; *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 11 OBR 148, 463 N.E.2d 398; *In re Kerry Ford, Inc.* (1995), 106 Ohio App.3d 643, 666 N.E.2d 1157. Although Ford potentially could have raised the issue of lack of subject matter jurisdiction earlier, and could have perhaps prevented much of this litigation, it is well established that subject matter jurisdiction may be raised at any stage of the proceedings. *Id.*

This court has already held that R.C. 4517.50 may only be applied prospectively. *Id.* at 648, 666 N.E.2d at 1160–1161. See, also, *Men–Guer Chrysler–Plymouth, Inc. v. Chrysler Corp.* (S.D. Ohio 1994), Nos. 92–3923 and 92–3924, unreported, 1994 WL 7609. Thus, R.C. 4517.50 does not apply to the franchise agreement that the parties entered into in 1972. Artz, however, argues that the 1972 franchise agreement was materially altered after the Act's enactment date and, therefore, the agreement between the parties constitutes a new agreement which is subject to the Act, including R.C. 4517.50.

Artz argues that several changes to the parties' agreement constitute material alterations. First, Artz argues that the transfer of a thirty-nine-percent ownership interest in the dealership corporation from the sole shareholder to his son constitutes a material alteration because the agreement between the parties stresses the personal nature of who is to manage and own the dealership. Second, Artz argues that the 1991 update of the "Standard Provisions," which were incorporated into the 1972 agreement, constitutes a material alteration. Finally, Artz argues that the increase in the holdback provision, from two percent to three percent, constitutes a material alteration.

Hearing Examiner Blaugrund noted that minor modifications of a contract are not sufficient to warrant retroactive application of the Act. See *Bitronics Sales Co., Inc. v. Microsemiconductor Corp.,* (D.Minn.1985), 610 F.Supp. 550. Hearing Examiner Blaugrund also noted that there must be a significant or material alteration of the relationship between the parties in order for a new contract to exist which postdates the Act. We agree with Judge Stratton's decision, wherein she stated that the board is in a better position to determine this question of fact: namely, what constitutes a material substantive alteration to an automobile dealer franchise agreement.

Artz cites *Northwest Lincoln–Mercury v. Lincoln Mercury Div., Ford Motor Co.* (1987), 158 Ill.App.3d 609, 110 Ill.Dec. 633, 511 N.E.2d 810, in support of its proposition that a transfer of ownership in stock constitutes such a material alteration. Initially, this court notes that that case involved the Illinois statute, not the Ohio statute. Moreover, that case involved a one-hundred-percent transfer of stock, a majority share of stock. In the instant action, a minority share of stock has been transferred. For those reasons, we find *Northwest Lincoln–Mercury* to be distinguishable from the instant action.

■ The board found that the redistribution of shares of ownership of Hal Artz Corporation was an internal change to one party only, and did not affect the relationship of the corporate parties. Thus, the redistribution of internal ownership interests in the Hal Artz Corporation did not change the corporation's status as a party to that agreement. The hearing examiner, and the board, found that the corporation remained a party to the agreement both before and after the change. Accordingly, we find that the board's determination that a transfer of thirty-nine percent of the stock did not transform the 1972 agreement into a new agreement subject to the Act is supported by the evidence in this case.

■ Artz next argues that the "Standard Provisions" issued in 1991 imposed new obligations on Artz, and therefore constituted a material alteration to the 1972 agreement. However, the 1972 agreement incorporates the "Standard Provisions," along with "any duly executed and delivered supplement or amendment thereto." The "Standard Provisions" further incorporate bulletins, such as the "Vehicle Terms of Sale Bulletin" and "Customer Service Bulletin."

The 1972 "Standard Provisions" provide as follows:

"4. (B) Warranty and Policy and Campaign Service.

"(1) The Dealer shall perform all warranty and policy service on each COMPANY PRODUCT sold by the Dealer, or presented by 'visiting owners' * * * in accordance with the warranty and policy applicable thereto and the applicable provisions of the Warranty Manual and CUSTOMER SERVICE BULLETIN."

"Customer Service Bulletin" is defined in the 1972 Standard Provisions as:

"[T]he *latest* CUSTOMER SERVICE BULLETIN *and amendments thereto furnished to the Dealer from time to time by the Company* establishing standards for authorized Lincoln dealers with respect to service personnel, training, tools and equipment, for customer handling procedures and for evaluating the Dealer's service performance." (Emphasis added.)

Thus, any changes made by Ford in the 1991 amended "Standard Provisions" or "bulletins," which pertained to providing customer service to all owners, was an amendment arguably contemplated by the original 1972 agreement. The 1972 agreement clearly provides for amendments to bulletins that the dealer may provide from time to time. Again, whether such an amendment constitutes a "material" change is a question of fact that is better left to the board's expertise.

Moreover, it appears that Artz has waived this issue, insofar as this court cannot find anything in the record to demonstrate that Artz raised the issue of whether such changes in warranty service are material, in its argument to the board or in its appeals to the court of common pleas.

Accordingly, this court rejects Artz's argument with respect to Section 4(b) of the 1991 amendments to the Standard Provisions.

■ Likewise, we find that the "Vehicle Terms of Sale Bulletin No. LM–5," dated April 23, 1991, is also an amendment contemplated by paragraph 1(g) of the 1972 agreement. Paragraph 1(g) of the 1972 agreement provides in part:

" 'VEHICLE TERMS OF SALE BULLETIN' shall mean the *latest* VEHICLE TERMS OF SALE BULLETIN *and amendments thereto* furnished to the Dealer from *time to time* by the Company setting forth the terms of sale and ordering procedures applicable to sales of VEHICLES to authorized Lincoln dealers." (Emphasis added.)

Vehicle Term of Sales Bulletin No. LM–5 was issued on April 23, 1991 to all dealers pursuant to the 1972 Agreement. This sales bulletin increased the holdback provision from two percent to three percent. Paragraph 10 of the 1972 "Standard Provisions" provides that the sales of company products by the company to the dealer will be made in accordance with the terms of sale set forth in the applicable vehicle terms of sale bulletin. Again, the 1972 agreement provided that these vehicle terms of sale bulletins would be amended from time to time.

Apparently, the hearing examiner and the board did not agree with Artz's assertion that this constituted a material alteration, given the fact that the 1972 agreement contemplated that new and amended vehicle terms of sale bulletins and customer service bulletins would be issued from time to time, and that these bulletins were incorporated by reference into the 1972 agreement. It is not appropriate for this court to reweigh the evidence or to substitute its judgment for that of the trial court. The board's decision, that the above "changes" were not materially sufficient to render the 1972 agreement a "new" agreement, is supported by reliable, probative and substantive evidence. We cannot find that

Judge Pfeiffer and Judge Stratton abused their discretion in affirming the board's orders dismissing these cases for lack of subject matter jurisdiction.

For all of those reasons, Artz's first and second assignments of error are overruled. For the same reasons, we sustain Ford's first assignment of error in case No. 96APE04–478. Clearly, once Judge Pfeiffer put on her entry of January 30, 1996, dismissing the case for lack of subject matter jurisdiction, Judge Fais's later entry of March 18, 1996, was a nullity. However, the fact remains that the March 18, 1996 entry went on, and Ford properly appealed that judgment to this court. In an effort to clarify the record in this case, we reverse and remand case No. 96APE04–478, so that the trial court may put on an entry in that case as well, dismissing for lack of subject matter jurisdiction.

Given our disposition of Ford's first assignment of error, the remaining assignments of error in case No. 96APE04–478 are overruled as moot. App.R. 12(A).

Accordingly, this court holds that the judgments of the trial courts in case Nos. 96APE02–247 and 96APE02–248 are hereby affirmed. The judgment of the trial court in case No. 96APE02–478 is hereby reversed, and the cause is remanded, and the trial court is instructed to put on an entry dismissing this matter for lack of subject matter jurisdiction.

> *Judgments affirmed*
> *in case Nos. 96APE02–247*
> *and 96APE02–248;*
> *judgment reversed and cause remanded*
> *in case No. 96APE02–478.*

Petree and Tyack, JJ., concur.