**BOB TATONE FORD, INC.,**
**Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY,**
**Defendant–Appellee.**

**No. 98–4207.**

United States Court of Appeals,
Sixth Circuit.

Submitted: Nov. 4, 1999

Decided and Filed: Dec. 17, 1999

Ronald L. Burdge (briefed), Martina M. Dillon, Burdge Law Office, Dayton, Ohio, for Plaintiff–Appellant.

Elizabeth A. McNellie (briefed), George W. Hairston (briefed), Baker & Hostetler, Columbus, Ohio, for Defendant–Appellee.

Before: GUY and BOGGS, Circuit Judges; HOOD,* District Judge.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, Bob Tatone Ford, Inc., appeals from the entry of summary judgment in favor of defendant, Ford Motor Company. Plaintiff's claims arise from attempts by Ford Motor Company (Ford) to terminate the franchise agreement with plaintiff, which was entered into in 1975. Plaintiff appeals the dismissal of its claim for wrongful termination under the Ohio statute commonly referred to as the Motor Vehicle Dealers Act, Ohio Rev.Code Ann. §§ 4517.54–55 (Anderson 1997). Also at issue is plaintiff's claim that Ford breached the contract by failing to give 120 days notice of termination, failing to provide a reasonable opportunity to cure perceived performance deficiencies, and refusing to conduct a hearing before the Ford Dealer Policy Board. After a review of the record and the arguments presented on appeal, we affirm.

---

* The Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation.

## I.

Ford Motor Company and Bob Tatone Ford entered into a Ford Sales and Service Agreement (FSSA) in December 1975, which did not have a termination or expiration date. The FSSA has two provisions regulating termination by Ford: (1) termination at will upon 120 days written notice (Para. 17(f)); and (2) termination for nonperformance by the dealer, upon written notice of deficiencies, an opportunity to cure, and at least 90 days written notice (Para. 17(c)). The FSSA also provides for an appeal to Ford's Dealer Policy Board of "[a]ny protest, controversy or claim by the Dealer ... with respect to any termination or nonrenewal of this agreement" or settlement of account after termination becomes effective (Para. 18(b)). Ford sent a notice of termination to plaintiff in April 1995, asserting nonperformance of plaintiff's sales and service responsibilities. This letter references discussions between Ford and plaintiff about plaintiff's lower than average share of sales of both new cars and parts beginning in December 1993 and continuing until April 1995. Plaintiff appealed the termination to the Policy Board, which met with plaintiff twice to consider the alleged performance problems and the objections presented by plaintiff.

On October 27, 1995, the Policy Board issued a decision recommending that plaintiff's primary market area (PMA) be changed and that plaintiff be given "one final opportunity" to cure deficiencies in sales. As a result, the Board determined that it would

> defer its decision until 1996 data are available in early 1997. At that time, the Board will re-evaluate Tatone's performance and, hopefully, its progress. Beginning in January 1996, Tatone's

market share (under the MP formula) will be based on the revised PMA[.]

The Policy Board's decisions are binding on Ford, but are not binding on the dealer. Apparently not satisfied with the outcome, plaintiff continued to pursue a separate protest filed with the Ohio Motor Vehicle Dealer Board (MVDB) under Ohio Rev. Code Ann. §§ 4517.54–55.

In January 1996, Ford provided the MVDB with a copy of Ford's Policy Board decision and represented that Ford had rescinded the April 1995 notice of termination, altered plaintiff's PMA, and would defer final decision on the termination until early 1997. Ford proposed that the protest be dismissed without prejudice to plaintiff's right to refile, subject to Ford's jurisdictional defenses. Upon the recommendation of the hearing examiner who reviewed both the letter from Ford and the Policy Board's decision, the protest was dismissed without prejudice because it was rendered moot by the withdrawal of the notice of termination.

Ford's Policy Board revisited the appeal from the notice of termination, as it stated it would, and issued a written decision dated September 10, 1997.[1] The Policy Board found that, despite being given sufficient opportunity to correct problems, the deficiencies in sales performance continued, and thus Ford did not act unfairly or unreasonably in issuing the notice of termination. Affirming the termination, the Policy Board indicated that it would become effective 30 days after receipt of the letter and advised that this decision could be appealed to binding arbitration under the terms of the FSSA.

Plaintiff promptly filed suit in state court along with an application for a preliminary injunction. In a letter dated October 8, 1997, Ford agreed to extend the

---

1. Plaintiff makes much of the fact that the second Policy Board decision had a new "file number" and that the first notice of termination was rescinded or withdrawn. There is no question, however, that the Policy Board found performance deficiencies initially and intended to review plaintiff's performance again after plaintiff had a chance to improve its sales. While plaintiff was not bound by the decision, Ford was bound and could not go forward with the termination until after the Policy Board finished its review.

effective date of termination for an additional 90 days. Plaintiff requested a Policy Board review of this termination notice, which was refused. After Ford removed the case to federal court, plaintiff filed an amended complaint and Ford moved for summary judgment. The magistrate judge recommended that Ford's motion for summary judgment be granted on all claims. Over plaintiff's objections, the district court adopted the report and recommendation and dismissed the amended complaint. This appeal followed.

## II.

■■■ We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Ohio Rev.Code Ann. § 4517.54

■■■ With respect to plaintiff's claim that Ford's attempt to terminate the parties' contract violated Ohio's Dealers Act, the district court found that application of the statutory provision to contracts that predated its enactment would violate the Ohio constitution. Section 4517.54(A) states:

> Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise *except for good cause*. This section governs any action or intent to terminate, discontinue, or not renew a franchise whether the franchise was entered into prior to or after the effective date of this amendment.

OHIO REV.CODE. ANN. § 4517.54(A) (as amended effective Oct. 22, 1987) (emphasis added). This statute, enacted in 1980, replaced an existing statute, and was subsequently amended in 1987. The Dealers Act sets notice requirements; provides for a protest and a hearing before the Ohio MVDB; declares that a franchise may not be terminated, discontinued, or not renewed unless the MVDB finds that good cause exists for the action; and defines the circumstances constituting "good cause" sufficient to terminate a franchise. *See* OHIO REV.CODE ANN. §§ 4517.54–55. The agreement in this case was executed in December 1975, well before § 4517.54 was enacted in 1980, or the retroactive language was added by amendment in 1987.

■■■ The issue is whether the application of the statute to Ford's attempt to terminate the FSSA in this case would violate Article II, § 28 of the Ohio Constitution, which states in part that "[t]he general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts[.]" This precise issue was addressed in the unpublished decision in *Men–Guer Chrysler–Plymouth, Inc. v. Chrysler Corporation*, 16 F.3d 1220 (Table) (6th Cir.), *cert. denied,* 513 U.S. 810, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994). In *Men–Guer*, the court found that despite the clear intent of the legislature to make § 4517.54 retroactive, its application affected the substantive, vested right of the franchisor to terminate a franchise in the absence of good cause. Although not bound by an unpublished decision from another panel, we find its reasoning persuasive and its conclusion correct.

■■■ Under Ohio law, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." OHIO REV.CODE ANN. § 1.48 (Anderson 1990). In 1987, the Ohio legislature added retrospective language to several sections of the Dealers Act, including § 4517.54(A). We find, as did the court in *Men–Guer*, that § 4517.54(A) was intended to apply retrospectively. Thus, we examine the

constitutional question of whether the retroactive or retrospective application of the statute affects "substantive" or "remedial" rights. *See Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988). If the statute is purely remedial in its effect upon pre-existing rights, obligations, and interests, retroactive application does not violate Article II, § 28 of the Ohio Constitution. *Id.* Substantive rights are implicated when, among other things, a statute impairs or takes away vested rights; affects an accrued substantive right; or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction. *Id.* at 496.

As the court in *Men–Guer* observed, one intermediate Ohio court has explicitly held that §§ 4517.54 and 4517.55 could not be applied retroactively to govern the termination of an agreement entered into before the statute became effective because these provisions are substantive. *See Coulter Pontiac, Inc. v. Pontiac Motor Div., Gen. Motors Corp.*, 4 Ohio App.3d 169, 446 N.E.2d 1128, 1131 (1981). There is no indication that the Ohio Supreme Court would abandon the decision in *Coulter*. In fact, the decisions in both *Men–Guer* and *Coulter* were discussed in an Ohio case determining whether another section of the dealer franchise act could be applied retroactively. *See In re Kerry Ford*, 106 Ohio App.3d 643, 666 N.E.2d 1157, 1160–62 (1995).

Plaintiff relies upon several other Ohio appellate decisions to support the contention that § 4517.54 may operate retrospectively in this case. Although two of the cases refer to Chapter 4517 as a "remedial" statute that must be construed liberally to effectuate its purpose, none of the cases concern the issue of whether the statute could be applied to the termination of a dealer contract entered into before the statute's effective date. *See General Motors Corp. v. Joe O'Brien Chevrolet, Inc.*, 118 Ohio App.3d 470, 693 N.E.2d 317 (1997); *Earl Evans Chevrolet, Inc. v. General Motors Corp.*, 74 Ohio App.3d 266, 598 N.E.2d 1187 (1991) (remedial nature discussed in construing the meaning of "good faith" or "coercion" under § 4517.59); *Car Bus., Inc. v. Fleetwood Motor Homes of Indiana, Inc.*, 23 Ohio Misc.2d 40, 492 N.E.2d 488 (1985) (issue was whether franchise agreement must be in writing to be subject to the statute).

While the claim in *O'Brien Chevrolet* was decided under § 4517.50 without raising the issue of retroactivity, that does not mean the court implicitly found that the statute could be constitutionally applied to agreements executed prior to enactment or amendment of the statute. Similarly, the court in *Earl Evans* held that the jury should have been instructed on the definition of good faith found in the 1980 version of § 4517.59, not the 1987 amendment, because the amendment could not be applied to conduct or transactions that predated the amendment. There simply was no issue concerning the retroactive application of § 4517.59 to agreements executed *before* 1980. Defendant suggests correctly that retroactivity could not have been an issue in *Earl Evans* because a transfer in ownership after 1980 would have created a new agreement subject to the 1980 Dealers Act. *See Hal Artz Lincoln–Mercury, Inc. v. Ohio Motor Vehicle Dealers Bd.*, 118 Ohio App.3d 501, 693 N.E.2d 811 (1997) (significant modifications can create a new agreement).

Turning to the statute itself, plaintiff contends that §§ 4517.54–55 are merely remedial because the 1980 Dealers Act did not make substantive changes to the provisions of its predecessor statute, Ohio Rev. Code Ann. §§ 1333.72–73 (repealed 1980). It is clear from a review of these provisions, however, that the 1980 Dealers Act substantively affected the ability of a franchisor to terminate an agreement. Although § 1333.73 prohibited termination for other than "just cause," it did not define just cause. In one Ohio case interpreting "good faith" and "just cause" in the context of the alcoholic beverage franchise provisions, the court equated just

cause with an absence of bad faith. *See Francis Bonanno, Inc. v. ISC Wines of California*, 56 Ohio App.3d 62, 564 N.E.2d 1105 (1989). As the Ohio court concluded in *Coulter*:

> The major and substantive change accomplished by the new dealer statutes is the provision which now requires that franchise contracts made after the statutory effective date can be terminated only upon the grounds defined by the statute. Thus, [§§ ] 4517.54 and 4517.55 cannot be described as remedial or procedural. The are substantive statutes.

*Coulter*, 446 N.E.2d at 1131.

Finally, plaintiff asserts that § 4517.54 nonetheless could be applied "prospectively" in this case because Ford did not attempt termination until after the effective date of § 4517.54. This ignores, however, that Ford acquired its rights under the contract when the parties executed the agreements and not when Ford exercised those rights. *See, e.g., Dale Baker Oldsmobile, Inc. v. Fiat Motors of N. Am., Inc.*, 794 F.2d 213, 220 (6th Cir.1986) (applying Michigan law to provision of its motor vehicle dealer act). The district court correctly concluded that § 4517.54 could not be constitutionally applied to the attempts to terminate the agreement which predated the adoption of the statute.

## B. Breach of Contract

■ The district court dismissed plaintiff's breach of contract claim finding that (1) Ford could terminate the agreement without cause upon 120 days prior written notice under paragraph 17(f) of the FSSA and (2) plaintiff had the benefit of more than 120 days notice because the termination did not become effective on the date originally indicated. Plaintiff disputed that 120 days' notice was given, emphasizing that the April 1995 notice of termination had been withdrawn, the September 1997 Policy Board decision stated that the termination would become effective in 30 days, and the October 1997 letter stated the termination would be effective after 90 days.

On appeal, plaintiff claims the court erred by ignoring Ford's "admission" that: "Although none of these notices alone was for the entire 120 day period contemplated by the Agreement, plaintiff was given notice far in excess of the time contemplated by the Agreement to wind up the affairs of the dealership." This argument is without merit. There is simply no dispute that plaintiff had actual written notice of termination that did not become effective within ·120 days. As the district court found, this is all that the FSSA required.

■ Plaintiff next challenges the district court's decision for failing to mention the allegation concerning the refusal to hold a Policy Board hearing with respect to the October 8, 1997, letter. Dismissal of this claim was not erroneous. The facts do not support plaintiff's characterization of the October 1997 letter as a termination independent of the April 1995 termination. While it is true that the first Policy Board decision prevented Ford from carrying out the April 1995 termination, it also clearly found grounds for termination and deferred the matter in order to give plaintiff an opportunity to improve its sales under the new PMA. The Policy Board's September 1997 decision reviewed plaintiff's progress and affirmed Ford's decision to terminate the agreement. The October 1997 letter was nothing more than an indication that Ford would act on the affirmance and granted an additional 90–day extension. This cannot be seen under any rational interpretation to trigger a new right to protest the termination before the Policy Board.

■ Finally, plaintiff alleged that Ford breached the contract by failing to provide plaintiff with a reasonable opportunity to cure perceived performance deficiencies as is required for a termination under paragraph 17(c). Specifically, plaintiff argues that Ford did not advise it of alleged performance problems after April 1995 and

before September 1997. Ford argues that even if we were to find that paragraph 17(c) must be satisfied, plaintiff had adequate opportunity to cure. This claim was properly dismissed, however, because Ford had the right to terminate the contract at will under paragraph 17(f).

**AFFIRMED.**